STATE EX REL. DUDEK, Relator, v. CIRCUIT COURT FOR MILWAUKEE COUNTY and another, Respondents.

*February 1—May 9, 1967.*

562

566

572

573

For the relator there was a brief by *Frisch, Dudek, Banholzer & Slattery,* attorneys, and *Edward A. Dudek* of counsel, all of Milwaukee, and oral argument by *Edward A. Dudek.*

For the respondents there was a brief by *Frank & Hiller,* attorneys, and *Myron B. Katz* of counsel, all of Milwaukee, and oral argument by *Mr. Katz.*

A brief *amicus curiae* was filed by *Gibbs, Roper & Fifield,* attorneys, and *Clay R. Williams* of counsel, all of Milwaukee.

BEILFUSS, J. The issue, broadly stated, is to what extent and under what conditions can an attorney for a party to an action be required to reveal his preparation for trial by means of a pretrial discovery deposition.

The relator, Mr. Dudek, has requested the court to review four problems: (1) The dual role of the lawyer in the adversary system, (2) the difference between the attorney-client privilege and the lawyer's work-product protection, (3) the disclosure required by the attorney

in this case, and (4) the burden of proof in attorney work-product problems.

Our pretrial discovery examination statute, sec. 326.12 (now 887.12), was repealed and re-created by the legislature in 1961. Prior to re-creation a party or an officer, agent, or employee could be adversely examined before trial. The statute after re-creation provides that "any party may examine *any person,* including a party" for discovery purposes. Thus the rights of any party to a pretrial discovery of relevant, nonprivileged matters concerning the litigation have been greatly enlarged.

Secs. 887.12 and 269.57, Stats., which provide for the inspection of documents and property, now permit pretrial discovery in the Wisconsin courts analogous to the procedures in the federal system under Rules 26 to 37 of Federal Rules of Civil Procedure.

The significance of the federal rule changes was stated by the United States supreme court in *Hickman v. Taylor* (1947), 329 U. S. 495, 500, 67 Sup. Ct. 385, 91 L. Ed. 451, as follows:

"The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privi-

leges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial."

Let our first observation be that the ultimate objective of the adversary trial system and of pretrial discovery is identical. The ends of justice and civil peace are best served when our trial procedure results in an informed resolution of controversy. The basic objective of our trial system, then, is the ascertainment of the truth, whether by court or jury, on the basis of those factors legal and factual, best calculated to effect a decision which comports with reality. The thought, of course, is that justice can more likely be done if there is a preliminary determination of the truth of facts.

A second observation is that our liberal rules of pretrial discovery (and the attorney-client privilege for that matter) are meant to facilitate the job of the adversary system in accomplishing its objective. Pretrial discovery is designed to formulate, define and narrow the issues to be tried, increase the chances for settlement, and give each party opportunity to fully inform himself of the facts of the case and the evidence which may come out at trial. Thus the function of pretrial discovery is to aid, not hinder, the proper working of the adversary system.

The fundamental reason why our adversary system works well is that it contains built-in, you might say automatic, machinery which supplies the incentive to insure that the conduct of the participants always tends toward greater investigation and revelation of the objective truth. The motivation for winning the case and the motivation for thorough investigation are, at worst, roughly parallel. The hope of victory at trial impels the diligence and industry of the attorney.

Involved in the case at hand is the problem of what protection the courts ought to accord to all of what is generally referred to as "the work product of the lawyer." In formulating rules concerning the discovery or non-

discovery of work product, a primary concern must be to preserve the lawyer's incentive to industry, the bedrock principle of the practical working of our adversary system of jurisprudence. Any rule which tends to diminish this incentive will necessarily diminish the aggregate investigation of facts by lawyers. This, in turn, will lessen the efficiency of the rational decision-making machinery of our adversary system. Effective trial preparation must be encouraged in order to enhance the prospects of an informed resolution of the controversy. Accordingly, we shun any rule which would tend to encourage indolence or lying back in pretrial investigation or which would tempt an attorney to unfairly conceal the results of investigations they have made.

Traditionally, in our adversary system, a lawyer occupies a dual role: He is the advocate of a party and an officer of the court. As we have stated, we believe that a lawyer's wholehearted representation of his client's cause is best calculated to bring about a just solution of litigation and that procedural rules should be structured so as to facilitate such vigorous representation. Yet the vigor of advocacy is not without limitation, for to use the adversary system to shield facts necessary to an enlightened decision would defeat the fundamental objective of that system. However attractive the uses of adversity may be, "[T]he conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness." Canon 22, Canons of Professional Ethics.[1] The dual role of a lawyer, as an advocate and an officer of the court is a requirement of the practical administration of justice. If lawyers do not conduct themselves with candor and fairness as officers of the court, decisions could be based on factors other than the merits. In addition to these two sometimes conflicting roles, we herein consider a third conflicting role, namely the lawyer as a

---

[1] See also Attorney's Oath as required by sec. 256.29, Stats.

witness. In resolving the conflicts that appear we should choose the path that fairly leads to the most enlightened decision on the merits.

With these preliminary basic considerations in mind, we turn to more specific problems of the action before us.

Mr. Dudek refused to answer several questions propounded to him and stated one of his objections to be that his answer would call for a privileged communication between client and attorney.

Sec. 885.22, Stats., embodies the rule that communications from a client to his attorney, and the attorney's advice to his client in the course of the professional relationship is privileged from disclosure unless the privilege is waived by the client or unless disclosure is required for the protection of the attorney, the client, or the client's interests. We first notice that the privilege protects "communications," not necessarily facts or evidence. The policy of this privilege was expressed by this court in *Jacobi v. Podevels* (1964), 23 Wis. (2d) 152, 156, 127 N. W. (2d) 73:

"One of the fundamental policies of our law, and one which dominates in the absence of a special policy arising in particular types of situations, is that the judicial system and rules of procedure should provide litigants with full access to all reasonable means of determining the truth. Secrecy of communication between one person and his attorney is one of the exceptions. It is based upon recognition of the value of legal advice and assistance based upon full information of the facts and the corollary that full disclosure to counsel will often be unlikely if there is fear that others will be able to compel a breach of the confidence."

The policy choice of the rule is clear. The administration of justice is thought best promoted by a rule which encourages clients to reveal the facts fully to their attorneys. By encouraging revelation of facts to the attorney, the privilege is also calculated to serve the

basic objective of the jurisprudential system. Without the rule, parties would not reveal all of the facts because of a fear of detriment or embarrassment. It is better to have otherwise concealed facts within the knowledge of the person charged with the direction of the lawsuit, even though he must not reveal the communication, than to have those facts or opinions buried within the knowledge of the client. This is because the lawyer, by application of professional skill, can best make use of what he has learned has really happened and prepare proper defenses to aspects of the case detrimental to his client. Although the communication may not be revealed unless the client so wishes, the result of the privilege is a more informed resolution of controversy, at least in the aggregate number of cases.

Wisconsin, like most jurisdictions, has recognized only a narrow ambit to the communications included within the attorney-client privilege. *Tomek v. Farmers Mut. Automobile Ins. Co.* (1955), 268 Wis. 566, 569, 68 N. W. (2d) 573. This narrowness in scope of the privilege has resulted in a number of cases which make clear the type of communications which are not protected by the privilege. In its landmark case on work product, *Hickman v. Taylor, supra,* at page 508, the United States supreme court summarizes often troublesome items which it considers *not* protected by the attorney-client privilege:

"We also agree that the memoranda, statements and mental impressions in issue in this case fall outside the scope of the attorney-client privilege and hence are not protected from discovery on that basis. It is unnecessary here to delineate the content and scope of that privilege as recognized in the federal courts. For present purposes, it suffices to note that the protective cloak of this privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writ-

ings which reflect an attorney's mental impressions, conclusions, opinions or legal theories."

Our court has also had the opportunity to hold a number of communications not protected by the privilege of sec. 885.22, Stats. *Tomek v. Farmers Mut. Automobile Ins. Co., supra* (statements made to an attorney by nonclient third parties) ; *State ex rel. Reynolds v. Circuit Court* (1961), 15 Wis. (2d) 311, 112 N. W. (2d) 686, 113 N. W. (2d) 537 (opinions of expert appraisers prepared in anticipation of trial) ; *Jacobi v. Podevels, supra* (report by an insured to his insurer before litigation commenced and before an attorney was assigned to investigate a possible claim) ; *Foryan v. Firemen's Fund Ins. Co.* (1965), 27 Wis. (2d) 133, 133 N. W. (2d) 724 (communication by nonparties to their own attorney, which statements were not antagonistic to the interest of these clients and were probably intended to be made public.) [2]

The law is well settled that once the professional relationship is established, all communications, oral and written, between attorney and client are privileged from production excluding those exceptions outlined in the statute. And it is the communications, not facts relevant to the controversy, which are shielded by the privilege. Thus while the privilege forbids an attorney from revealing facts, knowledge of which he obtained solely through communication from his client, it does not protect the client from searching discovery process which may force him to disgorge what he knows about the case, at least in civil actions. In this vein the courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer, nor may he secrete a preexisting document merely by giving it to his attorney.

---

[2] It should be noted that two of the above decisions did not arise at pretrial discovery: *Jacobi* involved a statement required to be produced at trial; *Foryan* a disclosure in an affidavit in opposition to a motion for summary judgment.

". . . So here the principle is controlling: if a document would be subject to an order for production if it were in the hands of the client it will be equally subject to such an order if it is in the hands of his attorney. An opposite conclusion would serve the policy of encouraging the client to make full disclosure to his lawyer right enough, but reasonable encouragement is given by the privilege for communications about documents, and the price of an additional privilege would be intolerably high. There are other doctrines which may impel a court to recognize a privilege against production of a preexisting document, but not the doctrine of privilege for lawyer-client communications." McCormick, Evidence (hornbook series), p. 188, sec. 93.

In discussing the reasons for the narrowness of the scope of the attorney-client privilege, the courts almost invariably look to the liberal policy of discovery evidenced by the modern statutory pretrial procedures. Besides the fact that the privilege has a long history of rather restricted compass, there is another reason for this restriction other than the liberality of modern discovery. The narrowness of scope is due to the procedural effect of placing an article of information under the umbrella of the privilege. Unless one of the few exceptions can be utilized, the protection afforded by the privilege is absolute. No showing of necessity, hardship, or injustice can require an attorney to reveal the protected information if his client does not waive the privilege, no matter how necessary the information is to a resolution of the particular issue on its merits. This drastic consequence should be narrowly confined.

In applying the privilege to the particular facts of our case, we can say generally that the privilege prevents Attorney Dudek from producing any correspondence between himself and his client or his client's agents, which correspondence is relevant to the lawsuit and written when Mr. Dudek was serving in his professional capacity. In addition, the privilege prevents Mr. Dudek from revealing any facts or strategies germane to the contro-

versy, knowledge of which he received from his client in his professional capacity. If Mr. Dudek could be forced to reveal any of these materials the purpose of the privilege would be frustrated because Mr. Dudek's client (and all clients in all future cases) would be discouraged from fully disclosing relevant facts to the attorney. It appears, generally, that all matters other than those just specified including reports of experts prepared for use by Mr. Dudek before or at trial are not protected by the attorney-client privilege.

The generalizations made above are subject to a most important caution. No application of the attorney-client privilege can be made without concrete reference to the specific issues and the particular set of facts of the case in which the privilege is sought to be invoked. The court expressed this caution in *Tomek v. Farmers Mut. Automobile Ins. Co., supra,* at page 571:

"It would be desirable, if possible or even practicable, to indicate in this opinion what information the attorneys should be permitted to disclose. Since it is not every bit of information which an attorney has which may not be divulged by him as a witness, it follows necessarily that whether the information which he has is privileged must depend upon the nature of the demand of the adversary and the circumstances of the case. Until the demand for information is made and the precise nature of the information sought is disclosed it is impossible for the court, upon whom the law has cast the duty of deciding the question, to determine whether there should be disclosure.

"The same is true with respect to the demand made in the subpoena in the instant case, that the attorneys produce certain books, records, documents, etc. There must, of course, be compliance with the subpoena and the papers produced upon the hearing. Whether their contents or information disclosed by them to the attorneys should be made known to the adversary will depend in each case upon the nature or character of the particular document sought to be used and the extent to which its use is sought."

In our case the important issues are whether Dr. Hiller became totally disabled on November 29, 1963, and whether Dr. Hiller retired on October 1, 1963. The privilege attaches only to communication between Mr. Dudek and Continental Casualty which are in some way relevant to those issues. On the other hand, the scope of discovery itself is restricted by relevancy to the issues. Sec. 269.57, Stats., permits inspection of documents "containing evidence relating to the action." Sec. 887.12, Stats., permits a deponent to be examined "regarding any matter, not privileged, which is relevant to the controversy."

Within the principles just discussed, Mr. Dudek may successfully resist discovery of correspondence and of knowledge of facts which he has obtained directly from his client.

Mr. Dudek's second objection to questions propounded to him at the adverse pretrial discovery examination was that the matters inquired into were privileged because they called for a revelation of his attorney's work product.

The term "work product of the lawyer" found its way into legal nomenclature with the landmark case of *Hickman v. Taylor, supra*. On February 7, 1943, the tug "J. M. Taylor" sunk while assisting a car float across the Delaware river at Philadelphia. Five of the nine members of the tug crew drowned. Three days after the accident the owners and insurers of the tug retained a law firm, including Attorney Fortenbaugh, to represent them in any possible litigation which might result from the accident. On March 4, 1943, the United States Steamboat Inspectors held a public hearing concerning the sinking of the "J. M. Taylor." The four surviving crew members testified and their testimony was made available to all interested parties. Shortly after the hearing Fortenbaugh interviewed the four survivors and obtained signed statements from them. Fortenbaugh also inter-

viewed other persons he believed to have pertinent information and made memoranda of their statements.

Representatives of all five deceased crew members presented claims against the tug, four of which claims were settled out of court. The claim of the representative of crewman Norman Hickman went to trial. In the course of discovery before trial the plaintiff filed 39 interrogatories directed to the tug owners. The 38th interrogatory stated:

" 'State whether any statements of the members of the crews of the Tugs "J. M. Taylor" and "Philadelphia" or of any other vessel were taken in connection with the towing of the car float and the sinking of the Tug "John M. Taylor." Attach hereto exact copies of all such statements if in writing, and if oral, set forth in detail the exact provisions of any such oral statements or reports.' "

The plaintiff filed supplemental interrogatories which asked whether any oral or written statements, records, reports or memoranda had been made concerning any matter relative to the towing operation and the death of Norman Hickman. If the answer was in the affirmative, the tug owners were requested to set forth the nature of all such statements, records, reports or memoranda.

All the interrogatories were answered by Fortenbaugh except No. 38 and the supplementary interrogatories. Fortenbaugh admitted statements were taken of the survivors but refused to summarize or set forth the contents thereof on the ground that the interrogatories requested "privileged matter obtained in preparation for litigation" and was an "attempt to obtain indirectly counsel's private files." Fortenbaugh stated that answering the interrogatories "would involve practically turning over not only the complete files, but also the telephone records and, almost, the thoughts of counsel."

The United States district court for the Eastern district of Pennsylvania, sitting *en banc,* held that the matters requested were not privileged and ordered the tug owners and Fortenbaugh to produce the information requested. 4 F. R. D. 479. Upon their refusal so to do, the court ordered them jailed for contempt.

The Third Circuit court of appeals, also sitting *en banc,* reversed the judgment of contempt, basically on the ground that the information requested was "privileged" with the meaning of the federal rules which permit discovery of all matters not privileged. 153 Fed. (2d) 212. In so holding the court used the term "privilege" in the traditional sense indicating absolute immunity from discovery.

A unanimous United States supreme court affirmed the circuit court, but on somewhat different grounds. The court rejected the attorney-client privilege as affording any basis of protection of the matters sought to be discovered by the plaintiff Hickman. The court also rejected the position of the court of appeals that these matters were privileged in the sense of being absolutely immune from discovery. Rather, the court held that the trial court could not order production of materials gathered by an attorney in preparation for litigation without a showing by the moving party that the production of this material was necessary to the preparation of his case or that nonproduction would cause prejudice or hardship.

Mr. Justice MURPHY, speaking for the court, set the framework conditions—the conduct of the trial under the liberal discovery procedures:

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is

essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries. . . ." *Hickman v. Taylor, supra,* at page 507.

After stating that the attorney-client privilege does not protect the materials sought by plaintiff Hickman, the court explained its qualified protection of an attorney's work product at pages 508–512:

"But the impropriety of invoking that privilege does not provide an answer to the problem before us. Petitioner has made more than an ordinary request for relevant, nonprivileged facts in the possession of his adversaries or their counsel. He has sought discovery as of right of oral and written statements of witnesses whose identity is well known and whose availability to petitioner appears unimpaired. He has sought production of these matters after making the most searching inquiries of his opponents as to the circumstances surrounding the fatal accident, which inquiries were sworn to have been answered to the best of their information and belief. Interrogatories were directed toward all the events prior to, during and subsequent to the sinking of the tug. Full and honest answers to such broad inquiries would necessarily have included all pertinent information gleaned by Fortenbaugh through his interviews with the witnesses. Petitioner makes no suggestion, and we cannot assume, that the tug owners or Fortenbaugh were incomplete or dishonest in the framing of their answers. In addition, petitioner was free to examine the public testimony of the witnesses taken before the United States Steamboat Inspectors. We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or in-

justice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.

"The District Court, after hearing objections to petitioner's request, commanded Fortenbaugh to produce all written statements of witnesses and to state in substance any facts learned through oral statements of witnesses to him. Fortenbaugh was to submit any memoranda he had made of the oral statements so that the court might determine what portions should be revealed to petitioner. All of this was ordered without any showing by petitioner, or any requirement that he make a proper showing, of the necessity for the production of any of this material or any demonstration that denial of production would cause hardship or injustice. The court simply ordered production on the theory that the facts sought were material and were not privileged as constituting attorney-client communications.

"In our opinion, neither Rule 26 nor any other rule dealing with discovery contemplates production under such circumstances. That is not because the subject matter is privileged or irrelevant, as those concepts are used in these rules. Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the

necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted."

Adopting, as we do, the rationale of *Hickman v. Taylor, supra* (as applied to sec. 269.57, Stats.) [inspection of

documents], and sec. 887.12 [discovery depositions], it would protect Mr. Dudek from disclosure of several items required by Judge O'NEILL's order. Without a showing of good cause, Mr. Dudek should not be required to state in what way certain medical reports are relevant to the amended answer. To hold otherwise would be to require "the production of written statements and mental impressions contained in the files and mind of the attorney." In addition, without greater specificity of request and a showing of good cause, *Hickman* would not require Mr. Dudek to produce all the items listed in the subpoena *duces tecum,* viz., "all reports, records, memoranda, files, notations, correspondence . . . relating . . . to the claim of the plaintiff" which were contained in his files.

From *Hickman,* as quoted above, we conclude that a lawyer's work product consists of the information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means.

This broad definition of lawyer's work product requires that most materials, information, mental impressions and strategies collected and adopted by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown.

The trial court in this instance limited the scope of *Hickman* to the mental impressions of counsel. In the court's memorandum opinion it is stated:

"The Hickman case was primarily concerned with the attorney's subjective mental processes. The attorney's mental impressions, observations, conclusions and legal theories constitute his work product."

We believe this definition of work product is too restrictive as to what part of a lawyer's preparation con-

stitutes work product. Equally important, it does not recognize abuses that could arise if broad discovery of a lawyer's preparation were to be permitted.

Consistent with the basic concepts of the adversary system and the benefits to that system of the expanded pretrial discovery procedures as set forth above, *Hickman* recognized at least four distinct (though not necessarily independent) rational bases for privileged protection of the work product of the lawyer. Briefly summarized, they are as follows:

(1) *Mental impressions or mental process of the attorney.* The proper functioning of our adversary system requires that lawyers be able to develop legal and factual theories without interference from opposing counsel. To allow such interference would deter lawyers from developing their theories, or at least from reducing such developments to writing. To assure adequate and proper preparation for trial, anything reflecting the mental impressions and professional skills of the lawyer should be protected from disclosure.

(2) *Anti-indolence.* Without a showing of good cause, the courts should shield from discovery all materials that would simply reward the indolence of the lawyer seeking discovery. One of the predicates of the adversary system is that counsel for both sides will be diligent in their preparation. If indiscriminate discovery is permitted the possibility that neither side will adequately prepare is present.

(3) *Diligence.* The proper function of the work-product rule is to motivate lawyers to more adequate preparation. Counsel will be less inclined to press his investigation if he knows that the fruit of his search, even if unfavorable to his case, will inure to the benefit of opposing counsel. In the absence of good cause the courts should provide the needed incentive to industry by protecting the diligent attorney's preparation from forced disclosure.

(4) *Ethical Considerations.* Because the proper administration of justice requires public confidence in the moral fibre of the profession, rules allowing or forbidding discovery should not encourage evasion or other sharp practices to the detriment of the ethical practitioner. Nor should an attorney, except in exceptional cases, be placed in the position where he is required to be a witness for or against his client.

For these reasons we hold that the work product of the lawyer usually is privileged and not subject to discovery except where the objectives of pretrial discovery are unnecessarily frustrated and where good cause is shown to make exception to the rule.

Keeping in mind the reasons for the privilege, good cause sufficient to warrant an exception must be based upon necessity, prejudice, injustice or hardship. This means that once a matter is classified as work product the court will require the party moving for discovery to make an adequate showing that the information contained in the work product is unavailable from other sources and that a denial of discovery would prejudice the movant's preparation for trial. What showing of unavailability or prejudice the court will require depends upon the particular facts and issues of the case, as well as what is deemed to be basis for classifying the particular item as work product. For example, if a matter or writing is classified work product because it reflects the mental impressions of the investigating attorney, only a showing of nonavailability after diligent search and of great prejudice to preparation could justify an order for production. On the other hand, a report classified work product though not reflective of an attorney's mental impressions, such as an expert's report so classified in order to encourage diligent investigation by both parties, may be discoverable upon a showing of the uniqueness or unavailability of the experiment giving

rise to the report and a possible offer to share costs of the experiment.

In short, what is good cause for discovery depends upon the reason a certain item is classified work product and the reason advanced for demanding discovery. This approach to the problem requires the exercise of sound judicial discretion by the trial judge confronted with the problem. It is a question of fairness tempered by the basic concepts of our adversary system and the desirable aspects of pretrial discovery. We recognize that this is a rather nebulous test that will cast upon counsel and primarily the trial judge the duty to articulate the reason for enforcing the privilege or recognizing an exception and ordering that discovery be permitted. The trial judge will also be required to determine the scope of the permitted discovery and the terms, if any, to be imposed. While we are reluctant not to fashion more exact rules, the subject is one that does not lend itself to exactness. We believe the ends of justice will be better served by relying on the judicious discretion of our trial courts to fairly meet a multitude of variable situations than to announce stereotyped rules that do not always accommodate a particular problem.

We now turn to some of the specific problems in the case at hand.

A statement by a party to his own attorney concerning anticipated or pending litigation need not concern us here. It is protected by the attorney-client privilege. It is almost universally held that a party's routine report to his employer or insurer which report happens to find its way into the files of the employer's or insurer's attorney is not protected work product.

Problems in this area occur when a party attempts to discover his own statement given to opposing counsel shortly after an auto accident or other incident giving rise to litigation. To a large extent the problem in

Wisconsin has been remedied by sec. 885.28, Stats., which provides:

"**Statement of injured; admissibility, copies.** (1) In actions for damages caused by personal injury, no statement made or writing signed by the injured person within 72 hours of the time the injury happened or accident occurred, shall be received in evidence unless such evidence would be admissible as part of the res gestae.

"(2) Every person who takes a written statement from any injured person or person sustaining damage with respect to any accident or with respect to any injury to person or property, shall, at the time of taking such statement, furnish to the person making such statement, a true, correct and complete copy thereof. Any person taking or having possession of any written statement or a copy of said statement, by any injured person, or by any person claiming damage to property with respect to any accident or with respect to any injury to person or property, shall, at the request of the person who made such statement or his personal representative, furnish the person who made such statement or his personal representative, a true, honest and complete copy thereof within 20 days after written demand. No written statement by any injured person or any person sustaining damage to property shall be admissible in evidence or otherwise used or referred to in any way or manner whatsoever in any civil action relating to the subject matter thereof, if it is made to appear that a person having possession of such statement refused, upon the request of the person who made the statement or his personal representatives, to furnish such true, correct and complete copy thereof as herein required. This subsection does not apply to any statement taken by any officer having the power to make arrests."

To the extent the statute does not fit a particular case, as in our case, we must again look to the underlying rationale of the work-product rule. A statement by a party to opposing counsel would in many instances be permeated with counsel's mental impressions and for that reason be classified as work product. But when deciding

what is good cause for discovery, the court should note that no amount of diligence on the part of the party's counsel could usually prevent the potential damage of a statement to opposing counsel. This is especially true since the statement of a party is admissible as evidence as a statement against interest, an exception to the hearsay rule.[3] The record before us does not specifically indicate that Dr. Hiller gave a statement to Mr. Dudek. If, in fact, such statement was given, a minimal showing of good cause would require its production.

Statements an attorney takes from nonparty witnesses in preparation for litigation would qualify as protected work product under every rationale for the work-product rule. The question then is what constitutes good cause for discovery. Generally, if a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed. However, if the seeker of discovery can show he has made a diligent search for the witness, discovery may be permitted of the statement of a witness who is dead, hostile, out of the jurisdiction or of unknown whereabouts. The court may also consider pecuniary hardship of requiring independent investigation by an impecunious party. There should be some positive showing that nonproduction would prejudice preparation for trial. All these factors, and others as they may appear, should be considered by the trial court within its sound discretion. In our case, Judge O'NEILL correctly held that Mr. Dudek need not produce statements he may have obtained from witnesses. This ruling was correct because plaintiff's counsel offered no showing of good cause for discovery.

Statements taken of witnesses by nonlawyers (though at an attorney's instance) may be viewed differently

---

[3] A number of federal courts require production of such statements without any showing of good cause, but the majority require some showing of good cause. But within this majority there is a great split as to what does and what does not constitute good cause. See 73 A. L. R. (2d) 12, 74–84.

from those taken by lawyers because the former are usually not reflective of the mental impressions of the attorney. Thus if the mental impressions rationale was to be taken as the sole basis for the work-product rule, statements taken by nonlawyers would be discoverable because they would not be work product. We have adopted a broader view which requires initial protection of all results of methods used by attorneys to bring more understanding of the merits into the attorney's file. From this view the court should encourage the use of nonlawyer investigators as a reward for diligence. A contrary rule would only penalize clients or law firms which could not afford to hire a lawyer to do investigations. In addition, initial protection of the reports of such investigators would remove the incentive for the sharp practitioner to conceal such reports. Given this initial protection, the court can then determine if the party seeking production has shown good cause in the manner utilized in the paragraph above. Yet because one of the reasons for the rule is inapposite, the court should require a showing less strong than for discovery of a statement taken by a lawyer. Judge O'NEILL, it appears, applied this latter approach in ruling that Mr. Dudek need not reveal reports of investigators.

In the case at bar Judge O'NEILL ordered Mr. Dudek to produce a list of the names of witnesses having facts relevant to the controversy and a list of the investigators utilized by him.[4] The federal cases hold, and good policy demands, that each party reveal to the other the names of witnesses he has discovered, even if those witnesses were discovered by a lawyer. First, the names of witnesses do not partake of the mental impressions of the lawyer. Second, although our rules should encourage attorneys to be diligent in finding witnesses, they should also afford each adversary the opportunity to be diligent

---

[4] We do not include expert witnesses within either "witnesses" or "investigators" as the terms are used here.

in exploring its side of the controversy. Thirdly, non-discovery of the names of witnesses could lead to sharp practices; persons whose testimony would be admissible evidence could be hidden or never subjected to cross-examination. Thus Judge O'Neill correctly ruled that Mr. Dudek must reveal the names of witnesses within his knowledge.

The names of nonexpert, nonwitness investigators do not enjoy the same status as those of witnesses. Neither the reports nor the testimony of nonexpert investigators would ordinarily be admissible in evidence at trial. If these investigators have found an item of admissible evidence, such as a piece of machinery in an industrial accident case, the fact of such a finding can be gleaned on interrogatories and the trial judge can then order production of the item. In final analysis, the names of his investigators are not part of the work product of the lawyer, but neither are they "relevant to the controversy." The only purpose discovery of these names would serve would be to let a party learn how diligent his opponent has been—information not relevant to the controversy. Accordingly, Judge O'Neill has incorrectly required Mr. Dudek to reveal the names of his nonexpert investigators without some additional showing of good cause.

In the case at bar, the physical condition of Dr. Hiller is the principal issue. Among the exhibits which Mr. Dudek produced on the deposition were two reports of expert medical physicians taken (presumably of Dr. Hiller) in 1964. When Judge O'Neill ordered Mr. Dudek to produce the names of investigators though he did not require production of investigators' reports, he did not distinguish between expert investigators and nonexpert investigators. Because physical condition is at issue, we must discuss discovery of the reports of expert investigators taken at an attorney's instance in anticipation of litigation.

Discovery of the work, reports, methods and conclusions of experts presents particularly difficult problems for a number of reasons. First, from a traditional standpoint, the expert's work and opinions are not "facts" in the sense usually associated with the circumstances surrounding an event which gives rise to a cause of action. Yet the expert's testimony, including his opinions by way of conclusion, is admissible evidence necessary to establish many, if not all, the elements of certain claims. Second, because of the highly complex nature of the factual situations underlying much modern litigation and the high cost of competent experts to properly analyze those situations, the indolent or unscrupulous can derive great advantage from free access to the work of an adversary's experts if discovery is allowed without a requirement of reciprocity. On the other hand, each party's access to the work and conclusions of the other's experts is often necessary to the basic formulation of issues before trial and to each party's preparation for trial. Added to this is the fact that the work of an expert is often reflective of the mental processes of the attorney under whose direction he works, especially in preparation for direct examination, and cross-examination of opposing expert witnesses.[5]

We are not here concerned with a pretrial examination of experts themselves [6] but their reports in the hands of the attorney as a part of his work product. Those portions of experts' reports that are designed only to assist the attorney in preparation of pleadings, in the manner of the presentation of his proof, and cross-examination of opposing expert witnesses are clearly a part of the attorney's mental observations and trial strategy and

[5] Sec. 269.57 (2), (3), Stats., provides: ". . . in any action brought to recover for personal injuries. . . ." for physical examinations and the exchange and inspection of reports, records and X rays. This is not an action to recover for personal injuries as such.

[6] See *State ex rel. Reynolds v. Circuit Court, supra.*

should not be the subject of pretrial discovery, without a strong showing of good cause.

The findings and opinions of the expert that go to the establishment or denial of a principal fact in issue stand on a different footing.

To review, the basic purposes of the discovery rules are succinctly summarized as follows:

"Implicit in the discovery rules is the principle that mutual knowledge of all relevant evidence and issues prior to trial is essential to the just, speedy and inexpensive disposition of litigation, unless such knowledge is sought in bad faith or its acquisition unduly annoys, embarrasses or oppresses a party or witness. The rules presuppose that such knowledge affords the opportunity to intelligently evaluate a case for settlement and to agree on matters not in dispute, thereby disposing of a controversy without trial or shortening a trial so that only the real issues are litigated; for protection against unfair surprise, because discovery is considered the means to detect and expose false claims, defenses, and evidence and to record testimony while memory is fresh and preserve it in the event a witness dies or leaves the jurisdiction, thereby minimizing the injustice inherent in delay of trial." Long, Discovery and Experts, 38 F. R. D. 111, 112, 113.

Yet within the adversary system the courts must impose, under the general heading of "the work-product rule," certain limitations upon discovery which is sought of attorneys, such as reports of experts in technical fields involved in certain litigation. The reasons for these limitations are categorized as follows: (1) To protect the mental processes and privacy of attorneys preparing for litigation from unwarranted interference by adverse parties; (2) to prevent laziness in preparation for trial; (3) to encourage diligent investigation of facts and law in anticipation of litigation; (4) to curb sharp practices which may be utilized by unethical lawyers.

Neither a flat rule of discovery nor of nondiscovery of the work of experts provides for the proper meshing of

the purposes of pretrial discovery and of the protection of work product. On the one hand a rule against all discovery from experts frustrates the pretrial functions of discovery, especially the functions of defining the issues and preparing counsel for cross-examination. In modern cases involving complex problems of accounting, stock transfer and evaluation, products liability, industrial machinery breakdown, and even medical evidence, it is entirely unrealistic to expect trial counsel to be prepared to cross-examine and offer defense testimony without pretrial discovery of the other side's experts, at least of the reports of those experts. On the other hand, unlimited discovery of the reports of experts could lead to inadequate preparation, concealment and other sharp practices.

The solution lies in the proper evaluation of the case and exercise of discretion by the trial court to limit and condition discovery to best effect the purposes outlined above. Under sec. 887.12 (3), Stats., the Wisconsin courts have (as have the federal courts under Federal Rules of Civil Procedure 30 (b)) power to limit discovery by any order "which justice requires to protect the party or witness from annoyance, embarrassment or oppression." The exercise of this statutory power must be quite flexible according to the particular facts and issues of the case, the relative positions of the parties, the necessity of mutual discovery, and the overall fairness to the parties and to the experts themselves. The court should be able to condition discovery of the work of an expert upon an exchange of experts' reports from the party seeking discovery. The court should be able to condition discovery of the results of a truly unique experiment upon a sharing of costs, or may require such discovery without sharing costs where the party who needs the discovery can demonstrate undue financial hardship and prejudice if he must pay or be forced to try to duplicate the experiment.

Long, *supra*, 38 F. R. D., at pages 153, 154, has suggested a procedure trial judges should use:

"The keystone of discovery is its reciprocity. When the parties are in a similar position, discovery should be encouraged; when they are not so situated, discovery should be conditioned or limited so that the parties may equally obtain the advantages discovery was designed to achieve.

"Whether through pre-trial order, or a rule of court, when a discovery issue is presented or when a case is set for trial, the court should ascertain whether the parties intend to call expert witnesses. If so, the court should order that the experts' investigations and studies be completed in detailed written form by a specified date sufficiently in advance of trial to permit discovery. The court may then provide, on such conditions as the circumstances of each particular case warrant, for the taking of the depositions of experts, for the exchange of experts' reports or for the taking of depositions after the exchange of experts' reports. Such procedures are well within the courts' power and are suggested as possible means to place the parties in a reciprocal position so that the advantages of discovery may be mutually available. Such procedures in the area of expert information will help to narrow and clarify the issues and afford the opportunity for better trial preparation, which in turn should shorten trials by confining the evidence to the real issues, or afford the basis for intelligent settlement. The same goals might be accomplished by other and different means, for the courts' power is flexible. No solutions designed to attain the goals of discovery have unvarying application."

Application of the above discussion to the case at bar would require approval of Judge O'NEILL'S order as it respects expert witnesses. Proper preparation of the plaintiff's case would require Mr. Dudek to furnish the plaintiff with a list of experts he knows to have facts relevant to the controversy, at least so that the plaintiff can check their qualifications. (The plaintiff should be required to furnish Mr. Dudek with a list of his ex-

perts in return.) However, without any showing of special necessity, offer of reciprocity, or offer to share costs, Judge O'NEILL seems quite justified in not requiring Mr. Dudek to produce any reports he may have obtained from these experts. In fact, Mr. Dudek may well have produced more than he need have if the doctors' reports dated 1964 were prepared in anticipation of litigation.

In the case at hand, the plaintiff has asserted as a matter of right his claim to discover certain materials from Mr. Dudek. Mr. Dudek has asserted that the plaintiff has the burden of proving the necessity of discovering these materials and his prejudice in nondiscovery. As we have seen, which materials will receive the qualified protection of the work-product rule depends upon the particular facts, circumstances and issues of the case in light of the policies underlying liberal discovery and the work-product rule. Once it is determined that a certain item is qualifiedly privileged, the burden rests upon the party seeking discovery to demonstrate sufficient reason for discovery to the trial court in light of policy as related to the particular facts of the case. This has been well established since *Hickman v. Taylor, supra,* at page 512, where the court said:

"But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted."

Sec. 887.12 (3), Stats., provides:

"ORDERS FOR THE PROTECTION OF DEPONENTS. After notice is served for taking a deposition, upon motion reasonably made by any party or by the person to be examined, and, upon notice and for good cause shown, the

court may make an order that the deposition shall not be taken, or that certain matters shall not be inquired into, or any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression."

Under this statute, when an attorney for a party is subpoenaed he may raise the objection that examination calls for a revelation of attorney's work product and as such is privileged. The party seeking discovery must then assume the burden of proof to establish sufficient good cause to warrant an exception to the privilege. Likewise, when an objection is made during an examination of an attorney upon the ground that the question calls for a revelation of the attorney's work product (as was done here) and the question is certified to the trial court, the party seeking the discovery has the burden to show good cause.

The case at bar involves special problems both of work product and of ethical proprieties because Attorney Dudek was subpoenaed, placed on the stand, and propounded questions relating to his knowledge of the substantive merits of the lawsuit and his opinion of the legal relevancy of certain exhibits to certain paragraphs in the amended answer. In addition, the subpoena *duces tecum* would require Mr. Dudek to produce all "notations" and "memoranda" which he had made with reference to the controversy. Judge O'NEILL'S order would require Mr. Dudek to answer the questions, though it makes no mention of the memoranda and notations demanded by the subpoena *duces tecum*.

These matters are the type most strongly protected by the work-product rule. Indeed, if we view as a spectrum the different kinds of materials protected initially by the rule and as a similar spectrum what is good cause for discovery, these materials would be situated at the most heavily protected end of each spectrum. This is because they are so closely representative of the

very policy reasons for the work-product rule. The knowledge and legal opinions of Mr. Dudek are not only reflective of this attorney's mental processes, they *are* his mental processes. His personal notations of such processes are but one step removed. Moreover, the areas an attorney should be most encouraged to cultivate are those of his personal knowledge and legal theories of the case. Diligence in such cultivation is hardly encouraged by a practice which allows a lawyer to be wrung of facts and ideas. Based upon these principles, the court in *Hickman* would give almost absolute privilege to this part of a lawyer's work product, at page 512:

"But as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer."

Even more disturbing are the ethical implications of forcing a lawyer to take the stand and to testify as to his knowledge of the facts and his opinion of the legal relevancy of certain exhibits to the pleadings. Forcing an attorney to assume the posture of a witness in this way makes him take a position entirely inconsistent with the dual role of the lawyer as advocate and officer of the court. This court has recognized this inconsistency as recently as June, 1966:

"An attorney represents his client and he should not be a witness or an affiant to evidentiary facts relating to the merits of the cause." *Southard v. Occidental Life Ins. Co.* (1966), 31 Wis. (2d) 351, 360, 142 N. W. (2d) 844.

The untenable position in which a lawyer finds himself when required to be a witness is stressed by Mr. Justice JACKSON in his concurrence to *Hickman v. Taylor, supra,* at pages 615–618.

Moreover, the lawyer who finds himself in the position of a witness might be required to withdraw as attorney from the case. Canon 19 of the American Bar Association Canons of Professional Ethics provides:

"APPEARANCE OF LAWYER AS WITNESS FOR HIS CLIENT. When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client."

In the hands of the unscrupulous the deposition of an attorney on the merits could be a potent weapon to force a competent and prepared opposing attorney to withdraw from the case.

In light of the foregoing, it is imperative that the deposition of opposing counsel concerning the merits and legal theories of a case should be required only upon a showing of complete unavailability of the information from other sources after diligent effort and then only upon a demonstration of extreme showing of hardship.

Judge O'NEILL'S order requiring Mr. Dudek to answer questions inquiring into his knowledge of the facts and his opinions of legal relevancy-should be prohibited in this case. At the very least a party should be required to build his case upon materials gathered elsewhere than from the testimony of opposing counsel.

In deciding what is good cause for discovery of certain matters within the knowledge or possession of an attorney, the court should consider the purpose of the inquiry in light of the facts and issues of the case. Indeed, *Hickman v. Taylor, supra,* at page 513, held that a stated purpose of better preparing counsel to make sure he had overlooked nothing was insufficient to warrant an intrusion into opposing counsel's trial preparation.

In our case the only issues are the alleged disability and the alleged retirement of the plaintiff. Ordinarily, knowledge and evidence probative of these issues would be uniquely at the disposal of the plaintiff. Thus without any concrete offer or showing of reasons why Mr. Dudek's preparations should be discovered, we must surmise that plaintiff's only purpose is to ascertain the extent of Mr. Dudek's preparation. This is not "good cause" to rifle an attorney's mind and file.

Pursuant to sec. 263.25 (1), Stats., Attorney Dudek verified the answer and amended answer for his client, Continental Casualty, whose home office is in Chicago. The plaintiff asserts that by so verifying, Mr. Dudek has placed himself in the position of a party and has waived all objections to pretrial discovery which could ordinarily be raised by an attorney. This argument does not comport with the principles of pretrial discovery discussed above.

In the first place, as an attorney Mr. Dudek may not waive any objections to discovery which are based upon the attorney-client privilege. Only the client can waive these objections. Second, the scope of discovery in the work-product area is particularly dependent upon the particular facts and issues of the case, with the general principle being that only as a last resort should an adversary be allowed to obtain information from the mind and files of opposing counsel. Since Mr. Dudek is the lawyer who is preparing this case for trial, he should be

protected by this principle where there is no showing of necessity. Moreover, this case really involves the plaintiff versus an insurance company. There is no party defendant in the ordinary sense of a participant in and eyewitness to historical facts. Thus by asserting that Mr. Dudek is in the position of an ordinary party who may be deposed concerning his knowledge of the facts, the plaintiff has set up a straw man. This is especially so in view of the fact that the amended answer merely put plaintiff to his proof of his claim. The fact that an attorney has verified a pleading under conditions permitted by the statute (sec. 263.25) does not change the character of his work product and does not give the opposing party or his counsel any greater right to inspect it.

*By the Court.*—Writ of prohibition absolute granted with respect to that part of the order which requires the petitioner to produce correspondence between petitioner and Continental Casualty, to testify to knowledge of facts which petitioner obtained from Continental after retainer, and to disclose his knowledge of facts going to the merits of the action. Writ of prohibition absolute granted with respect to that part of the order requiring the petitioner to produce materials protected as lawyer's work product as explained in the opinion unless, within twenty days after issuance of the writ, the plaintiff notices a hearing for the purpose of showing good cause why he should be able to discover those materials. The circuit court to further proceed in the action in a manner not inconsistent with the opinion.

HANLEY and HANSEN, JJ., took no part.