**FIRST WISCONSIN MORTGAGE TRUST, a Massachusetts business trust, Plaintiff,**

v.

**FIRST WISCONSIN CORPORATION, a Wisconsin Corporation, First Wisconsin Mortgage Company, a Wisconsin Corporation, and First Wisconsin National Bank of Milwaukee, a National Banking Association, Defendants.**

Civ. A. No. 75–C–127.

United States District Court, E. D. Wisconsin.

June 14, 1977.

L. C. Hammond, Jr., Milwaukee, Wis., and Bernard J. Nussbaum, Chicago, Ill., for plaintiff.

H. Templeton Brown, Chicago, Ill., and David E. Beckwith, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

On November 16, 1976, this court issued a decision and order disqualifying the law firm of Foley & Lardner from representing the defendants in this action. The stated reasons for that disqualification were that Foley & Lardner had represented the plaintiff in connection with matters substantially related to the issues in this lawsuit prior to the lawsuit. On December 15, 1976, the law firm of Mayer, Brown & Platt filed a notice of appearance on behalf of the defendants. On February 7, 1977, the defendants filed a motion for authorization to request access to Foley & Lardner's work product. That motion is presently before the court and, for the reasons hereinafter stated, is denied.

In its November 16, 1976 order, the Court relied on the test set forth in *Marketti v. Fitzsimmons,* 373 F.Supp. 637, 639 (W.D. Wis.1974), in determining that Foley & Lardner should be disqualified. *Marketti* held that, as a general rule, counsel should be disqualified if there exists:

" ' . . . (1) former representation [of a party to the present lawsuit], (2) a substantial relation between the subject matter of the former representation and the issues in the later lawsuit, and (3) the later adverse representation.' * * *"

*Marketti* relied on *E. F. Hutton & Company v. Brown,* 305 F.Supp. 371 (S.D.Texas 1969), in which case the Court, in addition to enunciating the three part test adopted by *Marketti,* distinguished the attorney-client evidentiary privilege from the conflicting interests rule. The Court said at page 394:

" * * * The evidentiary privilege and the ethical duty not to disclose confidences both arise from the need to encourage clients to disclose all possibly pertinent information to their attorneys, and both protect only the confidential information disclosed. The duty not to represent conflicting interests, on the other hand, is an outgrowth of the attorney-client relationship itself, which is confidential, or fiduciary, in a broader sense. Not only do clients at times disclose confidential information to their attorneys; they also repose confidence in them. The privilege is bottomed only on the first of these attributes, the conflicting-interests rule, on both."

█ It is apparent from *Hutton* that the underlying purpose in prohibiting attorneys from representing conflicting interests is to preserve not only the confidential information revealed to the attorney by the client but the confidence that a client has in his attorney.

█ The key factor of the *Hutton-Marketti* test is the subsequent adverse representation. Although all three elements are essential to a determination that counsel should be disqualified, subsequent adverse representation most directly violates the confidence that the former client placed in

his counsel. A client chooses an attorney whom he believes will vigorously and faithfully represent his interests. The client confides in his attorney to assure that representation. What greater violation of that confidence could there be than for that attorney in a subsequent court proceeding to actively represent interests opposed to those of his former client?

Given the fact that Foley & Lardner's representation of interests adverse to those of the plaintiff's is offensive to the purpose behind an attorney-client relationship, the question before the Court on this motion is what constitutes "representation".

■ The defendants seek authorization to request access to Foley & Lardner's work product. The definition of work product set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), was adopted by the Wisconsin Supreme Court in *State ex rel. Dudek v. Circuit Court for Milwaukee County*, 34 Wis.2d 559, 589, 150 N.W.2d 387, 404 (1967), as follows:

> "* * * [A] lawyer's work product consists of the information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means."

Foley & Lardner produced its work product effort to represent the interests of the defendants as vigorously and as competently as possible. To attempt to divorce Foley & Lardner's work product from its representation of the defendants would be an absurd position, and the defendants do not advance it. To the contrary, the defendants realize the importance of Foley & Lardner's work product to the representation of their interests in this lawsuit and assert it as grounds for their motion. However, it is precisely the importance of this work product to the representation of the defendants' interests that places its proposed use by substitute counsel in direct violation of the purpose behind disqualifica-

tion; that is, the preservation of the confidence of the former client given in the context of the fiduciary relationship he forged with his attorney.

The defendants contend that since they do not request confidential information given by the plaintiff to Foley & Lardner in the course of the former representation, there is no reason for this Court to deny their request. The defendants draw too fine a distinction. In addition to the earlier discussion concerning the distinction between the attorney-client evidentiary privilege and conflict of interests rule, the court in *Hutton* stated at page 395:

> "* * * [T]he ethical standards for attorneys must be formulated and construed in that way which will best protect the interests of clients and uphold the dignity of the legal profession. A strict construction of a lawyer's duties in cases like this one would give clients cause to feel they had been mistreated. If an attorney is permitted to defend a motion to disqualify by showing that he received no confidential information from his former client, the client, a layman who has reposed confidence and trust in his attorney, will feel that the attorney has escaped on a technicality. If courts protect only a clients' disclosures to his attorney, and fail to safeguard the attorney-client relationship itself—a relationship which must be one of trust and reliance—they can only undermine the public's confidence in the legal system as a means for adjudicating disputes. * * *"

Although the court in *Hutton* was referring to a proffered defense to disqualification, this Court feels that the above reasoning applies equally to the question posed by the motion. If an attorney's subsequent adverse representation in the form of his work product is not barred from use by substitute counsel, then there is little or no point in the initial disqualification. The former client has good reason for feeling that he has been mistreated and that the attorney has escaped on a technicality.

The defendants also contend that *Hutton*, the only case dealing with the propriety of

disqualified counsel turning over his files to substitute counsel, did not bar access to work product. *Hutton* is distinguishable in that the requested injunction against the production of files appears to have been based on an asserted attorney-client privilege. The Court denied the injunction on the grounds that the attorney-client privilege was inapplicable to the facts of the case. In this case, the plaintiff does not oppose the motion on the grounds of attorney-client privilege, but rather on the grounds that Foley & Lardner was disqualified *ab initio*. The Court agrees.

For the foregoing reasons,

IT IS ORDERED that the defendants' motion for access to the work product of Foley & Lardner is denied.