## CIRCUIT COURT OF THE CITY OF RICHMOND

Industrial Chemicals, Inc.

v.

Rehrig International, Inc.

September 21, 1983

Case No. LG 148

By JUDGE MARVIN F. COLE

Pursuant to the order entered herein on September 6, 1983, counsel for the defendant furnished me with a copy of Lonnie Dickerson's report entitled "Data as Concerns Role of Oil in Shutdown of H.P.M., 1500 Ton Injection Molding Machine at Rehrig International from 8/27/82 thru 9/14/82."

In addition I have for consideration an affidavit of Lonnie G. Dickerson and an affidavit of Elva A. Mapp.

The plaintiff sold the defendant certain chemical products costing $17,233.10. The sales took place between July 28, 1982, to September 23, 1982. The plaintiff filed suit on January 6, 1983, to recover the purchase price from the defendant. The defendant has filed a counterclaim against the plaintiff, alleging that the chemical products, especially Sun Vis 931 and Sun Vis 831, had damaged the defendant's HPM injection molding machine. The counter-claim seeks damages for $71,097.20 for negligence, breach of implied warranty, breach of express warranty, breach of contract, and failure to warn and adequately instruct.

On September 14, 1982, Lonnie G. Dickerson, Rehrig's manager of Molding Operations, examined and tested the defective oil. On January 16, 1983, at the request of his corporate superior, D. Philip Goodell, Dickerson prepared a detailed written report regarding his tests, their results, and his conclusions therefrom. Goodell presumably made this request after counsel requested sufficient information to adequately answer plaintiff's motion for judgment and to prepare a counterclaim. On January 17, 1983, Dickerson delivered the report to counsel in counsel's office. The evidence does not disclose whether this was a corporate attorney or an attorney handling the litigation. The posture of the case at this time is that counsel for the plaintiff has requested a copy of the report and counsel for the defendant has refused to deliver it. The court has a copy of the report to inspect and determine if it should be turned over to counsel for the plaintiff or not. Counsel for the defendant claims it should not be turned over for two reasons: (1) attorney-client privilege and (2) work product doctrine.

Furthermore, counsel for the defendant does not claim any exception on behalf of Dickerson that would forbid him from testifying at pretrial depositions as to the underlying facts of the case. Counsel only contends that the report is privileged.

I agree with counsel for the defendant. I believe that the case of Upjohn Co. v. United States, 449 U. S. 383, is determinative of the issue involved here. The court stated the following:

> The Court of Appeals declined to extend the attorney-client privilege beyond the limits of the control group test for fear that doing so would entail severe burdens on discovery and create a broad "zone of silence" over corporate affairs. Application of the attorney-client privilege to communications such as those involved here, however, puts the adversary in no worse position than if the communications had never taken place.

The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:

"[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." Philadelphia v. Westinghouse Electric Corp., 205 F. Supp. 830, 831 (E. D. Pa. 1962).

See also Diversified Industries, 572 F.2d at 611; State ex rel. Dudek v. Circuit Court, 34 Wis.2d 559, 580, 150 N.W.2d 387, 399 (1967) ("the courts have noted that a party cannot conceal a fact merely by revealing it to his lawyer"). Here the Government was free to question the employees who communicated with Thomas and outside counsel. Upjohn has provided the IRS with a list of such employees, and the IRS has already interviewed some 25 of them. While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege. As Justice Jackson noted in his concurring opinion in Hickman v. Taylor, 329 U.S. at 516, 91 L.Ed. 451, 67 S.Ct. 385, 34 Ohio Ops. 395, "Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary."