Rivera Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se encuentra presentada ante nuestra consideración una petición de certiorari presentada por el Estado Libre Asociado de Puerto Rico. Mediante la misma, se solicita la revisión de una resolución emitida por el Tribunal de Primera Instancia el 20 de diciembre de 2002 y archivada en autos copia de su notificación el 9 de enero de 2003. El foro recurrido determinó que procedía la producción de los documentos solicitados por la parte demandante en cuanto al Informe de auditoría preparado por la firma de contadores Yaldés García & Marín y los “working papers” generados por dicha firma durante la prestación de servicios al Departamento de la Familia relacionados al caso de autos.
Así las cosas, el 7 de noviembre de 2003, el Estado Libre Asociado de Puerto Rico presentó moción urgente solicitando paralización. Mediante la misma, dicha parte sostiene que en el caso de autos “no sólo se emitió una orden para la producción de documentos contra una empresa que no es parte en el pleito, sino que de suministrarse tales documentos, dicha empresa estaría violando la ley y las normas de ética que rigen a la profesión de contadores públicos autorizados”. Igualmente sostienen que los “working papers” solicitados por la parte demandante recurrida en el caso de autos, constituyen materia confidencial y privilegiada, la cual no puede ser divulgada por la firma Valdés García & Marín.
Contando con la comparecencia de ambas partes y luego de estudiado el derecho aplicable, resolvemos declarar no ha lugar la moción en auxilio de jurisdicción presentada y revocar la resolución recurrida.
I
Durante los años 1994 a 2000, la parte demandante-recurrida mantuvo contratos de renovación anual con el Estado Libre Asociado de Puerto Rico (en adelante el E.L.A.), mediante los cuales el Estado desembolsaba una cantidad a la demandante-recurrida Río Piedras Clinical and Training Institute Inc. (en adelante Río Piedras Clinical). Con estos fondos, Río Piedras Clinical prestaba servicios de trabajo social al Departamento de la Familia.
En octubre de 2000, el E.L.A. informó que el contrato con Río Piedras Clinical no sería renovado y que el programa sería cerrado inmediatamente. En la alternativa, el E.L.A. produjo un contrato por tres meses, a vencer *796 en enero de 2001, mediante el cual Río Piedras Clinical continuó brindando sus servicios. El contrato no se renovó y el programa fue cerrado.
Al reclamar la parte demandante el pago de lo acordado por el contrato de los últimos tres meses, el E.L.A. alegadamente se negó a pagar aludiendo que, a tenor con los señalamientos del auditor Valdés, García & Marín, el E.L.A. había realizado pagos excesivos en el pasado, por lo que dichas sumas debían acreditársele.
A esos efectos, el 9 de mayo de 2001, Río Piedras Clinical and Training Institute presentó una demanda en cobro de dinero contra el E.L.A. alegando específicamente que había suscrito un contrato con la Administración de Familias y Niños (A.D.F.A.N.) el 1 de noviembre de 2000, para la administración y operación del Proyecto de Servicios Integrales de Preservación y Apoyo Familiar con Multimétodo Empírico (S.I.P.A.F.), para lo cual fijaron un presupuesto de $450,000. Alegó que a pesar de que había cumplido con sus obligaciones, sólo se le había desembolsado $161,559, negándose la agencia a pagarles los restantes $288,389.39; que para continuar con la operación de S.I.P.A.F., tuvo que activar una cuenta de crédito a la cual se adeuda al mes de abril de 2001 la cantidad de $83,109.45; que el'cierre abrapto del proyecto conllevó gastos como consecuencia de la no renovación del contrato para la suma de $57,094.09.
El 10 de agosto de 2000, el E.L.A. presentó su contestación a la demanda y reconvención, donde básicamente negó la existencia de la deuda. Igualmente reclamó que la demandante había cobrado de forma indebida y en exceso a lo presupuestado la cantidad de $889,643.90, la cual se le reclamaba por medio de la reconvención; que la parte demandante había modificado y realizado cambios a la propuesta original sin seguir los procedimientos establecidos en el contrato otorgado entre las partes.
El 5 de septiembre de 2001,- se enmendó la reconvención a los fines de incluir como parte de la reclamación la cantidad de $102,920 adeudada por la parte demandante por concepto de pagos en exceso a lo presupuestado para los años 1996-1997 y 1997-1998. El 1 de noviembre de 2001, la parte demandante reconvenida presentó su contestación a la reconvención enmendada presentada por el E.L.A.
Las partes comenzaron su descubrimiento de prueba, lo cual incluyó, entre otras cosas, un requerimiento para la producción de documentos cursado el 12 de agosto de 2002, donde la parte demandante solicitó copia de: papeles de trabajo o “working papers'” generados por Valdés García & Marín durante la prestación de sus servicios al Departamento de la Familia con relación al caso de epígrafe, el expediente administrativo de Valdés García & Marín con relación al presente caso, incluyendo los siguientes documentos: facturas o “time reports” de los auditores; copia de todos los borradores generados antes del informe final de auditoría y copia de cualquier comunicación o archivo electrónico entre Valdés García & Marín y el Departamento de la Familia.
A esos efectos, el E.L.A. presentó una Moción Objetando la Producción de Documentos, en la cual argumentó, en síntesis, que los documentos solicitados constituian materia confidencial, privilegiada, y no pertinente al caso de autos. El 11 de octubre de 2002, la parte demandante presentó una solicitud de Orden para la producción de documentos y en oposición a solicitud de orden protectora, a la cual a su vez se opuso el E.L.A. a través de escrito presentado el 4 de noviembre de 2002.
El 7 de noviembre de 2002, se celebró una vista ante el Tribunal de Primera Instancia. En la misma se ordenó al E.L.A. que suministrara copia del informe de auditoría preparado por la firma Valdés García & Marín y copia de los contratos. Mediante moción presentada el 14 de noviembre de 2002, el E.L.A. sometió copia del mencionado Informe, así como del contrato suscrito entre las partes y de los contratos de servicios profesionales otorgados entre la parte demandante y las personas contratadas.
El 18 de noviembre de 2002, la parte demandante presentó su oposición en tomo a los señalado por el E.L.A., indicando que los documentos solicitados no son privilegiados, toda vez que la parte demandada contrató la firma *797 Valdés García & Marín como peritos en asuntos de auditoría y contabilidad en relación a un litigio ante los tribunales, por lo que alega que no puede existir privilegio de confidencialidad alguno.
Ahora bien, mediante resolución emitida el 20 de diciembre de 2002, archivada en autos copia de su notificación el 9 de enero de 2003, el Tribunal de Primera Instancia determinó que procedía la producción de los documentos solicitados por la parte demandante, en cuanto al Informe de auditoría preparado por la firma de contadores Valdés García & Marín y los “working papers” generados por dicha firma durante la prestación de servicios al Departamento relacionados al caso de autos. Asimismo, determinó que en cuanto a la solicitud del expediente administrativo de los autores del informe que obra en manos del E.L.A. así como en cuanto a las comunicaciones entre éstos y el Departamento de la Familia, procedía que se impartiera una orden de protección, sin perjuicio de que posteriormente se fundamente la pertinencia de los documentos cubiertos por la orden.
Inconformes con dicha determinación, el E.L.A. acude ante nos mediante petición de certiorari haciendo dos señalamientos de error alegadamente cometidos por el Tribunal de Primera Instancia, a saber: (1) que dicho foro erró al ordenar la producción de los “working papers” generados por la firma de contadores Valdés García & Marín, a pesar de que tal empresa no es parte en el pleito; y (2) que erró dicho foro recurrido al ordenar la producción de los “working papers” generados por la firma de contadores Valdés, García & Marín, no empece a que tales documentos constituyen materia privilegiada.
II
Por entender que ambos señalamientos de error se encuentra íntimamente relacionados, discutiremos los mismos conjuntamente. Veamos.
El fundamento básico del descubrimiento de prueba es que con anterioridad al juicio, toda parte en el litigio tiene derecho a descubrir toda la información que esté en posesión de cualquier persona. Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, Vol. II, San Juan, Publicaciones J.T.S., 1985, pág. 123.
La Regla 23.1 (a) y (b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, sobre el alcance del descubrimiento dispone, en lo pertinente, que “[l]as partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte... ”.
El descubrimiento puede extenderse a la “...existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes”. Una parte podrá realizar el “...descubrimiento de documentos y objetos que hayan sido preparados por o para el juicio, hayan sido preparados por o para otra parte, o por o para el representante de dicha parte, incluyendo su abogado, consultor, fiador, asegurador o agente”.
Así bien, pertinentes son todos los asuntos que puedan tener cualquier relación posible con la materia que es objeto del pleito, aunque no estén relacionadas con las controversias específicas que han sido esbozadas por las alegaciones. Rivera Alejandro v. Algarín, supra, a la pág. 834, citando a Sierra v. Tribunal Superior, supra, a la pág. 573. Para que una materia pueda ser objeto de descubrimiento, basta con que tenga una posibilidad razonable de relación con el asunto en controversia. General Electric v. Concessionaires, 118 D.P.R. 32, 40 (1986); Rodríguez v. Scotiabank P.R., 113 D.P.R. 210, 212 (1982).
De otra parte, las materias privilegiadas son únicamente aquellas reconocidas como tales por las Reglas de Evidencia, Sierra v. Tribunal Superior, 81 D.P.R. 554, 572 (1959). El criterio de pertinencia en el descubrimiento de prueba es más amplio que aquel comprendido por éstas. Rivera Alejandro v. Algarín, supra, *798 a la pág. 834, citando a 8 Wright & Miller, Federal Practice and Procedure: Civil, Sec. 2008 (1970), y Moores Federal Practice, New York, Matthew Bender & Co., 1981, Sec. 26.55 [1].
A esos efectos, debemos señalar que los privilegios consagrados en nuestras Reglas de Evidencia 32 L.P.R. A. Ap. IV se han definido como “unos derechos de confidencialidad que implican exclusión de evidencia para proteger al titular del derecho”. Ernesto L. Chiesa, Tratado de Derecho Probatorio (Reglas de Evidencia de Puerto Rico y Federales), Publicaciones J.T.S., Tomo I, 2000, a la pág. 185.
A través de la invocación de los privilegios, se excluye materia privilegiada por consideraciones de política pública, con el propósito de adelantar determinados valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad. Id., a las págs. 185-186.
Debido al efecto que tienen en la tarea de descubrir la verdad, los privilegios consagrados en las Reglas 25 a la 32 de Evidencia se interpretan en forma restrictiva. Regla 35 de Evidencia, 32 L.P.R.A. Ap. IV. Entre los privilegios más conocidos, se encuentran el privilegio abogado-cliente y el privilegio entre cónyuges.
Aunque originalmente no se incluyó en las Reglas de Evidencia, la Ley de Contabilidad Pública de Puerto Rico, Ley Núm. 293 de 15 de mayo de 1945, estableció el privilegio de las comunicaciones entre el contador público autorizado y su cliente. En la referida ley se estableció que “[nJinguna corte exigirá a ningún contador público autorizado o contador público que divulgue información o evidencia obtenida por él en su carácter confidencial como tal”. Citada en Arthur Young & Co. v. Vega III, 136 D.P.R. 157 (1994). Véanse, además, Ramírez Mas v. Tribunal Superior, 95 D.P.R. 415 (1967); Carlos E. Díaz Olivo, El privilegio contador-cliente, ¿un super privilegio?, 58 Rev. Jur. U.P.R. 77 (1989). La Ley Núm. 124 de 11 de noviembre de 1994, tuvo el efecto de añadir la Regla 25 A a las Reglas de Evidencia, la cual es aplicable a los Chentes de los contadores públicos autorizados, según estos últimos son definidos por el estatuto. Dicha regla tuvo a su vez el efecto de sustituir el privilegio anterior establecido en la Ley de Contabilidad Pública, supra. Ernesto L. Chiesa, supra, a la pág. 316. El privilegio según está establecido actualmente, se parece al privilegio de abogado-cliente, aunque contiene ciertos apartados que constituyen “una novedad”. Id., a la pág. 317. Conforme la Regla 25 A, el poseedor del privilegio es el cliente y la comunicación confidencial, según definida en el estatuto, puede ser divulgada por razón de “interés público apremiante”. Regla 25 A (A) (2) de Evidencia, supra. Este último aspecto convierte este privilegio en uno cualificado, es decir, sujeto a un balance de intereses, similar al caso de secretos del negocio o de información oficial. Ernesto L. Chiesa, supra, a la pág. 317.
Ahora bien, la Regla 23.1(b) de las de evidencia dispone:

“(b) Documentos, objetos y otra prueba obtenida en preparación para el juicio. Sujeto a las disposiciones del inciso (c) de esta regla una parte podrá hacer descubrimiento de documentos y objetos que, con anterioridad al pleito o para el juicio, hayan sido preparados por o para otra parte, o por o para el representante de dicha parte, incluyendo su abogado, consultor, fiador, asegurador o agente. Estarán fuera del alcance del descubrimiento las impresiones mentales conclusiones, opiniones o teorías legales sobre el caso, del abogado o de cualquier otro representante de una parte. Una parte podrá requerir de la otra una lista de los testigos que la parte solicitada intenta utilizar en el juicio, así como un resumen breve de lo que se propone declarar cada uno. Igualmente, cualquier parte podrá requerir a cualquier otra que produzca copia de todas las declaraciones de testigos en poder de dicha parte. Asimismo, tanto las partes como los testigos pueden obtener copia de cualquier declaración prestada por ellos anteriormente. Para los propósitos de esta regla, una declaración prestada con anterioridad al juicio, incluye cualquier declaración escrita, firmada o aprobada por la persona que la prestó, o cualquier tipo de grabación de una declaración o la transcripción de la misma. ”

Como podrá observarse, queda fuera del ámbito del descubrimiento las impresiones mentales, conclusiones, *799 opiniones o teorías legales sobre el caso, del abogado o de cualquier otro representante de una parte. A nuestra Regla también se le adicionó "una disposición permitiendo que cualquier parte pueda requerir copia de todas las declaraciones presentadas por los testigos". Comentarios a la Regla 23.1(b), 32 L.P.R.A. Ap. II; véase también Cuevas Segarra, supra, Cap. V, págs. 123-129.
A esos fines, el Tribunal Supremo de Puerto Rico dispuso en el caso Ades v. Zalman, supra, que "[e]l producto de la labor del abogado (work product) consiste de esa información que él ha reunido y las impresiones mentales, teorías legales y estrategias que él persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorandum, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles o intangibles". State ex rel. Dudek v. Circuit Court for Milwaukee County, 150 N.W.2d 387 (1967). Para una exposición más profunda de este concepto véanse: Hickman v. Taylor, 329 U. S. 495 (1947); 35 A.L.R. 3d 412; E. M. Boyle, Comentario, Discovery-The Work Product Protection, 13 U. Kan. L. Rev. 125 (1964); A. B. Lafrance, Work-Product Discovery. A Critique, 68 Dick. L. Rev. 351 (1964); Y. K. Yamaguchi, Discovery and the Work Product Doctrine, 11 Loy. U. Chi. L.J. 863 (1980); D. G. Wills, Waiver of the Work Product Immunity, 1981 U. III. L. Rev. 953 (1981); R. D. Stokes, Discovering Investigative Report Under the Work Product Doctrine, 34 Baylor L. Rev. 156 (1982).
Añadiendo a los anterior, la Ley Núm. 13 de 27 de abril de 1994, 20 L.P.R.A. see. 789 dispone que:

“Todos los estados, récords, planes, documentos de trabajo y memorandos hechos por un contador público autorizado o contador público en relación con, o en el curso de servicios profesionales prestados a los clientes por tal contador público autorizado o contador público, excepto informes sometidos al cliente por dicho contador público autorizado o contador público, serán y quedarán de la propiedad de tal contador público autorizado o contador público, en ausencia de algún convenido expreso en contrario entre el contador público autorizado o contador público y el cliente. ”

Ahora bien, nuestro más alto foro expresó con relación a los casos de expropiación forzosa en el caso Eldemiro Martínez Rivera v. Tribunal Superior de Puerto Rico, 85 D.P.R. 1, a la pág. 13, que las reglas sobre descubrimiento de prueba son de aplicación a los procedimientos para la expropiación forzosa de propiedad particular. Martínez Rivera v. Tribunal Superior de Puerto Rico, supra, a la pág. 5. Por eso, en un procedimiento de esa naturaleza, una parte puede usar los métodos de descubrimiento de prueba pericial para investigar, entre otros, los siguientes extremos: (a) método utilizado para la valoración: su valor en el mercado, capitalización de rentas, costo de reproducción o alguno otro aceptable bajo las circunstancias del caso; (b) características de la propiedad expropiada que se han considerado; (c) relación de los factores de valoración empleados; (d) en el supuesto de que se hayan considerado ventas de propiedad similar, un detalle de éstas y la referencia al instrumento público en virtud del cual se formalizó la transacción y cualquier otro dato en relación con la misma; (e) planos, informes y otros documentos utilizados en relación con la tasación; y (f)calificaciones del perito que ha de testificar en el juicio.
No obstante, el descubrimiento de prueba pericial no puede utilizarse para los siguientes propósitos: (a) investigar el proceso mental empleado por el perito en su evaluación de los distintos factores considerados para arribar a su opinión y conclusiones sobre la justa compensación; (b) determinar el peso que el perito ha atribuido específicamente a cada factor de valoración y (c) formular a un perito preguntas hipotéticas sobre las cuales no haya prueba o en relación con las cuales no se le haya concedido suficiente tiempo para prepararse.
Dado que la información que la demandante recurrida interesa descubrir en este caso constituye materia privilegiada y las impresiones mentales, opiniones o teorías legales del perito, determinamos que no procede la solicitud de los mismos.
*800 III
Por todos los fundamentos anteriormente esbozados, procedemos a expedir el auto de certiorari y revocar la orden del Tribunal de Primera Instancia que le requiere al demandado peticionario la producción de los “working papers” generados por la firma de contadores Valdés García & Marín. Asimismo, se declara no ha lugar la moción en auxilio de jurisdicción presentada.
Notifíquese inmediatamente por telefax y la vía ordinaria a las partes y al tribunal recurrido.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Peana Oquendo Graulau
Secretaria General