BLAKELY and others, partners under the firm name and style of THE BROASTER COMPANY, Plaintiffs and Respondents, v. WAUKESHA FOUNDRY COMPANY, INC., Defendant and Appellant: ILLINOIS CENTRAL INDUSTRIES, INC., Defendant: WILLIAM F. JOBBINS (a foreign corporation), Defendant and Third-Party Plaintiff and Respondent: KAISER ALUMINUM & CHEMICAL CORPORATION, Third-Party Defendant and Respondent.*

*No. 281. Argued October 1, 1974.—Decided October 31, 1974.*
(Also reported in 222 N. W. 2d 920.)

* Motion for rehearing denied, with costs, on Decmeber 20, 1974.

For the appellant there were briefs by *Gibbs, Roper & Fifield* and oral argument by *Richard S. Gibbs,* all of Milwaukee.

For the plaintiffs-respondents there was a brief by *Lowry, Hunter & Tikalsky,* attorneys, and *Donald J. Tikalsky* of counsel, and oral argument by *James R. Sommers,* all of Waukesha.

DAY, J. The first question is, was there sufficient evidence in the record of an agreement by Waukesha Foundry to furnish written reports by its expert, thus waiving any work product privilege, to support the court's order that such report be furnished? We conclude that there was such an agreement and a resultant waiver even though the expert is not going to be called as a witness.

Waukesha Foundry claims such report is subject to a "lawyer's work product" privilege. This court in *State ex rel. Dudek v. Circuit Court* (1967), 34 Wis. 2d 559, 589, 150 N. W. 2d 387, recognized that the work product of a lawyer is usually privileged and not subject to discovery. In *Dudek,* this court defined "a lawyer's work product" as consisting of:

". . . information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible or intangible means.

"This broad definition of lawyer's work product requires that most materials, information, mental impressions and strategies collected and adopted by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown."

Subsequent to the commencement of this lawsuit, counsel for Waukesha Foundry wrote to counsel for The Broaster

Company under date of May 31, 1972, and said "I think it is important to us in the defense of these cases that those yoke bar arms be made available to us for inspection either by our own people or by experts independently selected by us. I, therefore, request that you advise me when they will be available . . . ." On August 23, 1972, a pretrial conference was had pursuant to order issued by the court on July 20, 1972. The record shows that the judge made notes in his handwriting which read as follows:

"Written interrogatories to be answered. Xchange of Expert exam reports Possible joinder of Kaiser Alum. Bars to be examined by defdt experts Attys will advise when prelims completed—and ask for further pre-trial."

Under date of November 13, 1972, counsel for The Broaster Company served a notice of motion and motion that among other things asked the court for an order to set a specific time when Waukesha Foundry must pick up 26 yoke bars located at the plaintiffs' expert's offices in Naperville, Illinois, and for an order setting a time limit within which the foundry and other defendants must complete their testing on said yoke bars and for setting a time when the yoke bars must be returned to The Broaster Company's experts and "for an Order setting forth a time by when the defendants and plaintiffs must mutually exchange all expert reports after the return of said yoke bars . . . ."

On November 27, 1972, at the hearing on The Broaster Company's motion, the judge stated: "My notes indicate at the pretrial conference held on August 23, 1972, that the written interrogatories were to be answered. There was to be an exchange of expert reports, . . . and the bars were to be examined by the defendant's expert." The court then stated that if defendant's experts kept the bars for more than thirty days the court ". . . will set

a limitation on it. . . ." The court also stated, "At this time the Court will not direct an exchange of reports, they will be exchanged as soon as they are available, and no further examination has to be made. . . ." Counsel for The Broaster Company then stated that if destructive testing was to be done, it should not be done on all bars at the same place and "it should be fully documented." Mr. Gibbs, counsel for the Waukesha Foundry said: "The tests will be fully documented." There was further discussion regarding possible destructive testing and the court entered an order that was signed on December 4, 1972, providing for picking up of the 26 broken yoke bars by agents of Waukesha Foundry, and also provided that testing should be done in thirty days and the bars returned. The order further provided, "the matter of exchange of expert reports and times to be set for same is held open pending further order of the court."

Under date of March 28, 1973, a notice of motion and motion was served on behalf of The Broaster Company, returnable April 16, 1973, which stated, "the plaintiffs . . . will move the court for an order setting a specific time within which the defendants and plaintiffs must mutually exchange all expert reports in the above-entitled matter. . . ." The attached affidavit stated that they were in receipt of a letter dated February 6, 1973, from Richard S. Gibbs, attorney for Waukesha Foundry, which is made part of the record, advising "It is my understanding that our expert has completed his testing of the bars . . . . It apparently will be some time before we do receive a report, however, I will, of course, let you know when that has been received. . . ." On April 16th, a hearing was held before the court in which the judge, among other things, stated that a pretrial conference was held on March 15, 1972, "at which time the matter was discussed with counsel, and it became apparent that there were numerous preliminary procedures which had to be

concluded before the matter was ready for trial, such as adverses, tests and examination of material, and examination of the experts, expert witnesses, should trial be had. . . ." The opening statements of counsel are not shown in the record. Mr. Gibbs reported that the yoke bars had been returned and the court asked "Do you anticipate Mr. Gibbs, the report will be forthcoming within the next ten days?" To which, Mr. Gibbs replied, "I hope so." The court then stated, "I suggest, in view of certain matters which are not within our knowledge at this time, barring unforeseen circumstances, the reports be exchanged within thirty days, and if not, the matter be brought on before the Court on an order to show cause why the direction has not been complied with. . . ." The court went on, "If reports are not provided to counsel by the 21st day of May, this matter will be brought on on May 21st at 9:00 o'clock for further proceedings." There was no written order following this hearing.

Under date of April 25, 1973, counsel for The Broaster Company wrote to other counsel in the case, suggesting a meeting on May 16, "at which a mutual exchange of all reports could be facilitated . . ." and stated that if any counsel was unwilling to exchange reports, they should communicate with him.

Under date of May 14, 1973, Mr. Gibbs, as counsel for the foundry sent a letter to the judge, with copy to each counsel, in which he stated that they would not call as a witness the expert who had examined some of the broaster arms and further advising, "He was and is retained as a consulting expert personally by me. Since he is only a consultant, the results of his examination are lawyer's work product . . . and, accordingly, will not be produced in report form or otherwise made available to counsel . . ."

Under date of May 16, 1973, counsel for The Broaster Company filed a notice of motion and motion returnable May 21, 1973, asking for an order requiring the foundry "to turn over a report from its expert, Leonard Taussig, of Taussig Associates, Inc., of Chicago, Illinois, to the plaintiffs' attorneys within a time to be set by the court, or in the alternative, for an Order requiring the attorneys for Waukesha Foundry to turn over the substance of all oral discussions that they have had with said expert, again within a set period of time, to the attorneys for the plaintiffs."

The affidavit attached to the motion states, "plaintiffs' experts indicate that on at least three (3) of the original whole bars turned over to the experts for Waukesha Foundry several pieces were cut, and the majority of the removed samples were not included in the return delivery to the plaintiffs' experts; that, on information and belief, further testing in the form of taking samples was done on other yoke bars by the experts of Waukesha Foundry."

Under date of May 18, 1973, Richard S. Gibbs, counsel for Waukesha Foundry, made an affidavit filed with the court on May 21, 1973, stating that within the first ten days of December, 1972, he called Mr. Taussig to determine whether Mr. Taussig was in a position to examine the broaster arms and upon learning that he was, he retained Mr. Taussig for the purpose of examining such broaster arms; that Mr. Taussig had never been retained by Mr. Gibbs "for the specific purpose of testifying but he was retained for the purpose of consultation as well as examination of the subject property. . . ." He further alleged that no testing was done destructive of the integrity of the arms nor the fracture surfaces of any of the arms that had been broken and further stated: "That no written report as to the details of the results of the testing done by Mr. Taussig has ever been received by

your affiant, but your affiant as well as one of the other attorneys for the defendant, Waukesha Foundry Company, Inc., discussed the same with Mr. Taussig at length." He further disavowed any intention of using Mr. Taussig as an expert witness at trial.

In oral argument before this court, Mr. Gibbs revealed he had, in fact, received a written communication from his retained expert, Leonard Taussig. When asked, "Did you reveal to the trial court, as you did here this morning, that you had a written communication from Taussig?" Mr. Gibbs replied: "No, I cannot say that I did that. I told the trial court, and an affidavit is in the record, showing that we had obtained no detailed written report and that remains the fact." Mr. Gibbs later stated: "There is no report. There is a very brief correspondence saying in essence we found some information we think you ought to discuss with us."

On May 21, 1973, the matter came before the trial court. The court, after reading portions of the hearing on November 27, cited above, stated:

"The thing that disturbs me, counsel, is that I am sure that as officers of the court legal procedures were used to obtain an examination of crucial evidence in this case, and with the understanding that the results of the tests would be provided to opposing counsel. . . . Now, in this case it was clearly understood in the opinion of the Court that the Court's power was sought to have inspection, and it was intended the results be interchanged between the parties. . . . Frankly I was amazed and surprised when I received a copy of a letter from Mr. Gibbs, after seeking and receiving the help of the Court, that he came to the conclusion this was a consultant, he didn't have a written report, and was not going to furnish such a report to counsel. . . ."

The court signed its order on the 23d of May, 1973.[2]

---

[2] *See* footnote 1.

Counsel for Waukesha Foundry in their brief do not deny that there was such an agreement or understanding. In its brief, Waukesha Foundry states, "We realize that counsel and the Court below felt that an unfair advantage was being taken on the basis in part that the services of the Court had been utilized to obtain the examination in question. . . . Absent a firm agreement that such exchange would be made under any and all conditions, it seems to us that such an understanding had to include the limitations inherent in *Dudek* . . . ."

At each of the hearings shown in the record, there was some reference by the court that there was to be an exchange of experts' reports. At no time did counsel for Waukesha Foundry ever state they would not agree to produce such reports until they first had had an opportunity to read them. The first indication of this was the letter to the court from Mr. Gibbs of May 14, 1973.

We conclude from the record before us that the court had reasonable grounds to believe that Waukesha Foundry had agreed to exchange expert reports based on the conduct and statements of Mr. Gibbs as attorney for Waukesha Foundry and as an officer of the court in the several hearings on the matter before the court.

We further conclude that where there is an agreement to exchange reports of experts, such as we have found here, such agreement cannot be nullified by later advising that such expert will not be called as a witness. At such point it is too late to invoke the protection of lawyer's work product that might otherwise be available had such agreement not been made. *State ex rel. Dudek v. Circuit Court* (1967), 34 Wis. 2d 559, 150 N. W. 2d 387.

This court has frequently held that in order to accomplish the purpose of pretrial procedure, there must be a spirit of cooperation between the court and the lawyers representing the litigants. *Fredrickson v. Louis-*

*ville Ladder Co.* (1971), 52 Wis. 2d 776, 781, 191 N. W. 2d 193.

We, therefore, affirm that part of the trial court's order of May 23, 1973, which orders that Attorney Richard S. Gibbs and the law firm of Gibbs, Roper & Fifield and the defendant Waukesha Foundry Company, Inc., provide a written report of the testing results and examination of their expert Leonard Taussig of Taussig Associates, Inc., of Chicago, Illinois, to all other counsel.

Production of such written report or reports is confined to those actually received by Waukesha Foundry or its attorneys and includes the communication referred to by Attorney Gibbs at the time of oral argument before this court and any other written communication on the subject matter in question from Leonard Taussig to attorneys for Waukesha Foundry or to Waukesha Foundry, prior to the court's order of May 23, 1973. In addition, Mr. Gibbs or any other attorney for Waukesha Foundry who had oral communication from Mr. Taussig shall prepare a written report containing the substance of all oral communications had between any of them and Mr. Taussig, prior to the order of May 23, 1973, pertaining to the testing results and examination of the broaster arms and such reports shall be furnished all counsel in the case. We make this requirement because of the waiver of any work product privilege which might otherwise attach to notes made by the attorney and kept in his files. The actual notes need not be produced, but a written resumé containing their substance and the substance of conversations not so recorded is justified and necessitated here because of the absence of or admitted paucity of any written communication from the expert after agreement had been made to furnish such a written report.

The second question is: Did the court abuse its discretion in ordering Waukesha Foundry to make its expert

available for adverse examination? We conclude that it did and we reverse that part of the trial court's order providing that: ". . . Waukesha Foundry Co., Inc., also make available said expert for adverse examination by other counsel for defendant in the above-entitled matter if they or any of them shall decide to take such examination."

While the order refers only to adverse examination by other counsel for the defendants, our ruling would also apply to adverse examination by The Broaster Company.

We reverse this portion of the order on two grounds: (1) The agreement was for the exchange of expert reports only and did not include adverse examination of the expert retained by Waukesha Foundry; (2) the Broaster Company has not shown the necessity for such adverse examination.

*Dudek* also set forth the circumstances under which the work product privilege would not apply. At pages 591, 592, this court said:

"Keeping in mind the reasons for the privilege, good cause sufficient to warrant an exception must be based upon necessity, prejudice, injustice or hardship. This means that once a matter is classified as work product the court will require the party moving for discovery to make an adequate showing that the information contained in the work product is unavailable from other sources and that a denial of discovery would prejudice the movant's preparation for trial. What showing of unavailability or prejudice the court will require depends upon the particular facts and issues of the case, as well as what is deemed to be basis for classifying the particular item as work product. . . . an expert's report so classified in order to encourage diligent investigation by both parties, may be discoverable upon a showing of the uniqueness or unavailability of the experiment giving rise to the report and a possible offer to share costs of the experiment."

The language above would not apply in the case at bar to the expert's written report because of Waukesha

Foundry's waiver. However, the principle would apply to the adverse examination of the expert. The trial court made no findings of a *Dudek* exception justifying adverse examination of Waukesha Foundry's expert. The Broaster Company alleges there has been a destruction of the evidence warranting such adverse examination, but in our opinion that conclusion is not supported by the record before us.

The Broaster Company has stated that three of the 26 broaster arms have been used by Waukesha Foundry's expert; that would leave 23 in evidence. If parts of those were taken by Waukesha Foundry for samples, there is no indication that the arms could not be used as evidence. The Broaster Company has had these or others tested by its experts and we can only assume that their experts are prepared to testify what they did and what their opinion is from such examination and testing. If Waukesha Foundry in cross-examination should point out missing portions of such broaster arms taken out by its experts, then plaintiff would be free to show through its expert that such portions were present when the arms were turned over to Waukesha Foundry and that they were missing when the arms were returned to The Broaster Company's expert.

Even in such case the defendant Waukesha Foundry would be entitled to an instruction to the jury that no adverse implication is to be drawn by the jury from the fact that Waukesha Foundry had such broaster arms or parts of them in its possession or in the hands of its expert, if that fact is called to the jury's attention. In view of the facts and circumstances of this case, The Broaster Company should not be permitted to invoke the absent-witness rule against Waukesha Foundry.

Unless there has been a waiver of the work product privilege, as there was here, we deem it of the utmost importance that under our adversary system counsel be

encouraged to do a thorough job of investigation, including consulting experts, without having the results of such investigation used against their client, when such expert is not actually to be used as a witness in the trial, subject to the exceptions, where good cause is shown, set forth in *Dudek* and *Crull v. Preferred Risk Mut. Ins. Co.* (1967), 36 Wis. 2d 464, 153 N. W. 2d 591.

*By the Court.*—Order affirmed, in part; reversed, in part; no costs to be taxed to either party.