STATE EX REL. SHELBY MUTUAL INSURANCE COMPANY, Petitioner, v. CIRCUIT COURT FOR MILWAUKEE COUNTY, Respondent.

*Argued January 3, 1975.—Decided January 20, 1975.—Released for Publication April 17, 1975.*
(Also reported in 227 N. W. 2d 161.)

For the petitioner there was a memorandum of authorities filed by *Kasdorf, Dall, Lewis & Swietlik,* attorneys, and *Terrance E. Davczyk* of counsel, all of Milwaukee, and oral argument by *Mr. Davczyk.*

For the respondent there was a memorandum of authorities filed by *Arnold, Murray & O'Neill* and *George R. Schimmel,* all of Milwaukee, and oral argument by *Mr. Schimmel.*

PER CURIAM. The controversy arises out of an action against the manufacturer of an allegedly defective product by an insurer subrogated to the rights of its insured, the purchaser of the product. Specifically, the case involves the question of to what extent a party, here the manufacturer, may discover the names and reports of expert consultants retained by an insurer in the course of investigating its claims.

The complaint alleges that on or about September 10, 1973, a fire occurred in the kitchen of a building owned by Paul and Marjorie Weitzel, caused by a defective stove which the Weitzels had purchased from the defendant, General Electric Company. The fire allegedly damaged the building and personal property of the Weitzels to the extent of $4,853.17. Plaintiff Shelby Mutual Insurance Company, the Weitzels' fire insurer, reimbursed them for their losses and, under the terms of the policy, became subrogated to their rights to the extent of such payment.

Shelby Mutual subsequently commenced a products liability action against General Electric, alleging that the stove was defective when sold to the Weitzels.

Pursuant to a subpoena duces tecum, Richard R. Eurich, local claims manager for plaintiff Shelby Mutual,

appeared before a court commissioner and was deposed by an attorney for defendant General Electric. During the course of such deposition, the attorney for General Electric sought the names and reports of experts retained by Shelby Mutual who had examined the stove. On the advice of counsel for Shelby Mutual, Mr. Eurich refused to supply such information. The questions were certified to the circuit court, where Judge CECI ordered that Mr. Eurich answer such questions and supply such information as had been requested by counsel for General Electric.

Shelby Mutual petitioned this court for a writ commanding the circuit court to vacate its order, and pursuant to an order to show cause, briefs were filed and arguments heard on the matter.

In *State ex rel. Dudek v. Circuit Court* (1967), 34 Wis. 2d 559, 150 N. W. 2d 387, we set out in great detail the purpose, nature and scope of the lawyer's work-product privilege. An exhaustive review of that case and its progeny is not required here, but it should be noted that at pages 594–596 we stated:

"Statements taken of witnesses by nonlawyers (though at an attorney's instance) may be viewed differently from those taken by lawyers because the former are usually not reflective of the mental impressions of the attorney. Thus if the mental impressions rationale was to be taken as the sole basis for the work-product rule, statements taken by nonlawyers would be discoverable because they would not be work product. We have adopted a broader view which requires initial protection of all results of methods used by attorneys to bring more understanding of the merits into the attorney's file. From this view the court should encourage the use of nonlawyer investigators as a reward for diligence. A contrary rule would only penalize clients or law firms which could not afford to hire a lawyer to do investigations. In addition, initial protection of the reports of such investigators would remove the incentive for the sharp practitioner to conceal such reports. Given this initial

protection, the court can then determine if the party seeking production has shown good cause in the manner utilized in the paragraph above. Yet because one of the reasons for the rule is inapposite, the court should require a showing less strong than for discovery of a statement taken by a lawyer. . . .

"  .  .  .

"The names of nonexpert, nonwitness investigators do not enjoy the same status as those of witnesses. Neither the reports nor the testimony of nonexpert investigators would ordinarily be admissible in evidence at trial. If these investigators have found an item of admissible evidence, such as a piece of machinery in an industrial accident case, the fact of such a finding can be gleaned on interrogatories and the trial judge can then order production of the item. In final analysis, the names of his investigators are not part of the work product of the lawyer, but neither are they 'relevant to the controversy.' The only purpose discovery of these names would serve would be to let a party learn how diligent his opponent has been—information not relevant to the controversy. . . ."

Neither of these situations referred to in *Dudek* precisely fits the situation here, where the names and reports of expert nonwitnesses are sought, but the quoted language does reveal this court's concern for the protection of information acquired by nonlawyers.

In *Halldin v. Peterson* (1968), 39 Wis. 2d 668, 159 N. W. 2d 738, we reversed the order of a trial court requiring the divulgence by a party of the names and addresses of its expert medical consultants, and stated at page 674:

"Requiring discovery of the names of doctors and X-ray technicians who have examined the X rays at the request of the plaintiffs' counsel would be a substantial obstacle to the proper and necessary trial preparation. At this stage of the pretrial preparation it could well make impossible the compilation of the work product defined in *Dudek*. In essence, the mere names and addresses of these doctors and technicians are a preliminary part of the work product being assembled by plaintiffs' counsel."

We stated in *Blakely v. Waukesha Foundry Co.* (1974), 65 Wis. 2d 468, 481, 482, 222 N. W. 2d 920:

"Unless there has been a waiver of the work product privilege, . . . we deem it of the utmost importance that under our adversary system counsel be encouraged to do a thorough job of investigation, including consulting experts, without having the results of such investigation used against their client, when such expert is not actually to be used as a witness in the trial, subject to the exceptions, where good cause is shown, set forth in *Dudek* and *Crull v. Preferred Risk Mut. Ins. Co.* (1967), 36 Wis. 2d 464, 153 N. W. 2d 591."

In *State ex rel. Dudek, supra,* pages 590, 591, this court propounded four important reasons for the extension of privileged protection to lawyers' work product:

"(1) *Mental impressions or mental process of the attorney.* The proper functioning of our adversary system requires that lawyers be able to develop legal and factual theories without interference from opposing counsel. To allow such interference would deter lawyers from developing their theories, or at least from reducing such developments to writing. To assure adequate and proper preparation for trial, anything reflecting the mental impressions and professional skills of the lawyer should be protected from disclosure.

"(2) *Anti-indolence.* Without a showing of good cause, the courts should shield from discovery all materials that would simply reward the indolence of the lawyer seeking discovery. One of the predicates of the adversary system is that counsel for both sides will be diligent in their preparation. If indiscriminate discovery is permitted the possibility that neither side will adequately prepare is present.

"(3) *Diligence.* The proper function of the work-product rule is to motivate lawyers to more adequate preparation. Counsel will be less inclined to press his investigation if he knows that the fruit of his search, even if unfavorable to his case, will inure to the benefit of opposing counsel. In the absence of good cause the courts should provide the needed incentive to industry by protecting the diligent attorney's preparation from forced disclosure.

"(4) *Ethical considerations.* Because the proper administration of justice requires public confidence in the moral fibre of the profession, rules allowing or forbidding discovery should not encourage evasion or other sharp practices to the detriment of the ethical practitioner. Nor should an attorney, except in exceptional cases, be placed in the position where he is required to be a witness for or against his client."

Although the lawyer's work-product rule does not, by its terms, extend to claims managers, some of the factors mentioned above are applicable to claims personnel due to the peculiarly quasi-legal nature of the function they perform. This is so because much of the investigation and research engaged in by claims personnel is done with an eye towards litigation—either in actual preparation therefor, or in an effort to evaluate the necessity thereof.

The engaging of expert consultants to assist in the evaluation of claims is necessary for efficient and accurate determinations of when liability exists and under what circumstances settlement presents a satisfactory alternative to litigation. Furthermore, it may often be necessary for the insurer to seek expert advice long before the decision to litigate is made, not only to assist in making that decision but also to obtain evidence and perform tests while memories are fresh and physical evidence is intact and unchanged. This court is of the opinion, therefore, that a claims manager should not be required to divulge the names of expert consultants not to be called as witnesses, or the reports of such experts not to be used in evidence, absent a showing of special need or hardship. Such protection exists even if the experts were consulted on the insurer's own initiative or before counsel was retained.

This position was alluded to in *State ex rel. Dudek,* *supra,* page 589:

"This broad definition of lawyer's work product requires that most materials, information, mental impressions and strategies collected and *adopted* by a lawyer after retainer in preparation of litigation and relevant to the possible issues be initially classified as work product of the lawyer and not subject to inspection or discovery unless good cause for discovery is shown." (Emphasis supplied.)

The term "adopted" clearly refers to the "materials, information, mental impressions and strategies" of others which the lawyer assimilates as part of his own work product. In the instant case, the opinions of experts consulted by the insurer become work product of the attorney when he assumes the file of the case. As such, they are protected.

We hasten to emphasize, however, that such restriction continues only until such time as the party seeking discovery makes, in the discretion of the trial court, "an adequate showing that the information . . . is unavailable from other sources and that a denial of discovery would prejudice the movant's preparation for trial." *State ex rel. Dudek, supra,* page 591. Furthermore, the extraordinary protection extended is not without its *quid pro quo.* Once the insurer invokes the privilege and refuses to divulge the names and reports of expert consultants, it is foreclosed from using such experts as witnesses and from using the experts' reports as evidence or as a basis of testimony of another, *i.e.,* someone familiar with the reports. In short, the insurer cannot have its cake and eat it too. [1]

---

[1] The gist of our holding is incorporated in the proposed Wisconsin Rules of Civil Procedure, sec. 804.01 (2) (c) 1 and (d) 2:

"(c) *Trial preparation: materials.* 1. Subject to par. (d) a party may obtain discovery of documents and tangible things otherwise discoverable under par. (a) and prepared in anticipation of litigation or for trial by or for another party or by or for

We note that the attorney for General Electric contends in his memorandum of authorities that in order for its experts to adequately examine the stove, it is necessary for them to know what was done to the stove in the way of testing by Shelby Mutual's expert consultants. While we do not conclude that such a reason for discovery is insufficient per se to overcome the privilege, the record here is inadequate for us to make such a determination. Therefore we remand the case to the trial court so that the question may be responded to by both parties and resolved in light of this opinion and the *Dudek* standards, in the sound discretion of the trial court.

Writ of prohibition granted pending determination by the trial court that General Electric Company has made an adequate showing of special need or hardship. Remanded for further proceedings not inconsistent with this opinion.

---

that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. . . .

"(d) *Trial preparation: experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under par. (a) and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows: . . .

"2. A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."