John P. SAVAGE, Plaintiff-Appellant,

v.

AMERICAN TRANSMISSION COMPANY, LLC and ATC
Management, Inc., Defendants-Respondents.

Court of Appeals

*No. 2012AP137. Oral argument November 20, 2012.
—Decided January 16, 2013.*

2013 WI App 20

(Also reported in 828 N.W.2d 244.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea H. Roschke* of *Michael Best & Friedrich, LLP*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Katherine Stadler* and *Bryan J. Cahill* of *Godfrey & Kahn, S.C.*, Madison.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.   This case addresses the determination of just compensation when an easement is taken by eminent domain. An easement provides a nonpossessory right to enter and use land in the possession of another that obligates the landowner not to interfere with the uses authorized by the easement. *See* RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.2 (2000). American Transmission Company, LLC ("ATC") took an easement on John Savage's property. Savage requested that a jury determine the amount of compensation he was due for the taking.

¶ 2. By statute, a jury is to arrive at a just compensation figure by determining the difference in the fair market value of the landowner's "whole" property before the taking of the easement compared to the fair market value of the landowner's whole property (including the easement area) after the taking. *See* WIS. STAT. § 32.09(6g) (2009–10)[1]; *see also Fields v. American Transmission Co.*, 2010 WI App 59, ¶¶ 13–14, 324 Wis. 2d 417, 782 N.W.2d 729. Prior to trial, the circuit court interpreted the easement that ATC took to involve a loss of only "aerial rights." The circuit court granted summary judgment to ATC as Savage's appraisal experts did not limit their opinions to a loss of "aerial rights." As the circuit court erroneously precluded Savage from offering testimony as to the value of his "whole" property before and after the taking of the easement, we reverse and remand for a jury trial as to the amount of just compensation.

¶ 3. Before we explain our reasoning, we pause to acknowledge the public policy concerns that support a permissive approach to the admission of evidence in determining just compensation in eminent domain cases. *See 260 N. 12th St., LLC v. DOT*, 2011 WI 103, ¶¶ 44, 48, 338 Wis. 2d 34, 808 N.W.2d 372. Savage's property rights were taken against his will and without his consent. Proceedings to determine just compensation for a taking by eminent domain are intended to benefit an owner whose property is taken against his or her will. *See id.* Given that the government statutorily allows eminent domain and writes the rules on how just compensation is determined, it is proper public policy

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

that a private citizen whose property is taken has the statutory right to have just compensation determined by a jury of his or her peers rather than by an arm of the same government that authorized the taking of the citizen's property in the first place.

## BACKGROUND

¶ 4.   In 1999, ATC's predecessor acquired a 19.68-foot-wide easement across Savage's property for the erection, maintenance, and operation of a high-voltage transmission line. The 1999 easement contains the poles that support the transmission lines and is not the subject of this appeal. In 2007, ATC began the process of acquiring a 20.32-foot-wide easement adjacent to the 19.68-foot strip to "secure aerial rights to add additional conductors (wires) to an existing transmission line," according to ATC's trial counsel. This easement (the "Supplemental Easement") is the subject of this appeal. The Supplemental Easement differs from the 1999 easement in that it does not allow ATC to place structures within the 20.32-foot Supplemental Easement area without the express written consent of the property owner.[2] The Supplemental Easement also prohibits Savage from placing any structures within the easement area.

¶ 5.   ATC's attempt to acquire the Supplemental Easement by negotiation failed. ATC thereafter utilized its condemnation power and took the easement through eminent domain. Savage appealed to the circuit court the amount that had been awarded by the Winnebago

---

[2] Savage has since sold the subject property, reserving his right to claim just compensation for the taking. For ease of discussion, we refer to Savage as if he still owns the property.

County Condemnation Commission, requesting that a jury determine the amount of just compensation he was due for the taking.

¶ 6. A jury never heard the case as the circuit court dismissed Savage's appeal on summary judgment. The circuit court found as a matter of law that only "aerial rights" were acquired by the Supplemental Easement. The circuit court precluded Savage's appraisal experts from testifying, finding that their testimony would not be relevant as they did not limit their opinions to a loss of "aerial rights." Without his own expert witnesses to testify as to the before and after value of his property, Savage tried to call an appraisal expert previously identified by ATC. ATC's expert invoked his privilege to not provide testimony for Savage. The circuit court upheld the invocation of the privilege and would not allow Savage to call ATC's expert as a witness. The court's rulings left Savage with no evidence as to the valuation of his property, and the court dismissed his case. Savage appeals.

## STANDARD OF REVIEW

¶ 7. An appeal from a ruling on summary judgment is reviewed de novo, employing the same standards as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

¶ 8. The interpretation of an unambiguous easement, *see AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835, and whether

137

an expert witness may be compelled to testify, *see Burnett v. Alt*, 224 Wis. 2d 72, 84, 589 N.W.2d 21 (1999), raise questions of law that we review independently. A circuit court's decision on whether to admit or exclude evidence based on the interpretation of an easement is reviewed for an erroneous exercise of discretion. *See Fields*, 324 Wis. 2d 417, ¶ 8. We will sustain evidentiary rulings that are based on an examination of the relevant facts, an application of the proper legal standard, and a demonstration of a rational process used to reach a reasonable conclusion. *Hoekstra v. Guardian Pipeline, LLC*, 2006 WI App 245, ¶ 14, 298 Wis. 2d 165, 726 N.W.2d 648.

## DISCUSSION

¶ 9.   Savage's issues on appeal can be boiled down to three:   (1) whether the court correctly interpreted the easement as granting only "aerial rights" to ATC; (2) whether the court erred in barring Savage and his experts from testifying as they did not limit their opinions to a loss of "aerial rights"; and (3) whether the court erred in refusing to allow Savage to call ATC's expert as a witness.

*The Supplemental Easement*

¶ 10.   The circuit court found the language of the written Supplemental Easement to be unambiguous. We agree. The Supplemental Easement sets forth what ATC can do in the easement area as well as what Savage cannot do in the easement area. The Supplemental Easement expressly permits ATC to use the 20.32-foot strip of land to "[c]onstruct, install, operate, maintain, repair, replace, rebuild, remove, relocate, inspect and

patrol" the transmission lines with the express provision that ATC "shall *not* place any structures within the Supplemental Easement Strip" without Savage's express written consent. ATC argues that, as the 1999 easement grants it the right to place support poles for the transmission lines and the Supplemental Easement does not, only "aerial rights" are at issue for purposes of valuation in the Supplemental Easement.

¶ 11. The language of the Supplemental Easement prohibits Savage—as owner of the 20.32-foot easement area—from placing any dwelling, structure, fixtures, trees, or shrubs within the Supplemental Easement area, including any below-ground water, sewer, or drainage facilities, without the express written consent of ATC. The Supplemental Easement also prohibits Savage from changing the grade of the land within the easement area by more than one foot without ATC's consent.

¶ 12. Despite the express restrictions in the Supplemental Easement on Savage's use of his land, ATC convinced the circuit court that only "aerial rights" were taken by ATC. The express written easement taken and placed upon the title to Savage's property says otherwise. The Supplemental Easement does not address nor reference a taking of only "aerial rights." ATC's appraisal experts did not define nor address the concept of "aerial rights" within their reports filed with the court. *See* WIS. STAT. § 32.09(8)(h). If what ATC's counsel and the circuit court meant by "aerial rights" is ATC's nonpossessory right to enter and use the air above the 20.32-foot strip of Savage's land at some certain distance above the ground level (apparently the height where the new transmission lines will sway in the air), we cannot find any support for that proposition within the language of the Supplemental Easement.

139

¶ 13.   Accepting ATC's argument that only "aerial rights" are at issue, it is evident from the language of the Supplemental Easement that those "aerial rights" can be enforced against Savage all the way down to—and below—ground level. We fail to see a distinction for a taking of "*only* aerial rights" when those "aerial rights" encompass the magma of the earth to the heavens.

¶ 14.   ATC also argues on appeal that restrictions imposed on Savage's property by the 1999 easement as well as existing setback and zoning requirements already precluded Savage from full use of the Supplemental Easement area. What ATC does not acknowledge is that the Supplemental Easement imposes an additional loss of use on Savage's property. The degree of imposition and the degree of the effect of this loss is for a jury to determine based upon all the evidence presented (by both Savage and ATC) as to the fair market value of the whole property before the Supplemental Easement went into effect and the fair market value of the whole property immediately after the taking.

■
¶ 15.   The circuit court erroneously focused on what ATC stated that it intended to do within the Supplemental Easement area rather than allowing a jury to consider how the express rights, restrictions, and limitations imposed by the Supplemental Easement affect the value of the "whole" property on a before and after basis. The determination of just compensation by a jury requires an examination from the viewpoint of the effect of the taking on the landowner, rather than an examination of the value of the rights gained by the condemnor.

¶ 16.    As we hold that the circuit court erred when it interpreted the easement to be a taking of only "aerial rights," we also find that the circuit court erroneously precluded Savage and his appraisal experts from testifying as to the value of the whole property on a before and after basis. Evidence is admissible at trial if it is relevant and does not fall within a small category of exclusions. *See* WIS. STAT. §§ 904.02, 904.03. Any factor related to an easement condemnation that affects the fair market value of property and that could influence the decision of a prospective buyer should be considered in the valuation. *Hoekstra*, 298 Wis. 2d 165, ¶ 33. The owner of property on which an easement is taken through eminent domain is entitled to recover not only for the loss of fair market value to the land taken but also for injury to the remainder. *See* WIS. STAT. § 32.09(6g); *Carazalla v. State*, 269 Wis. 593, 601–02, 70 N.W.2d 208 (1955), *vacated on other grounds,* 269 Wis. 593, 71 N.W.2d 276 (1955); *see also Kamrowski v. State*, 37 Wis. 2d 195, 199, 155 N.W.2d 125 (1967). Compensation for the taking of an easement is based on an assumption that the condemnor—here, ATC—will exercise all the rights that it has taken. *See* 26 AM. JUR. 2d *Eminent Domain* § 342 (2004). The jury must consider the most injurious use of the property reasonably possible. *Id.*

¶ 17.    As we stated in a recent case involving the exclusion of evidence presented to a jury charged with determining just compensation in an easement condemnation,

[T]he jury is not to determine the value of those property rights taken by the new easement to arrive at its just compensation award. Rather, a just compensation determination "is based on the fair market value of the land as a whole, which 'is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and considering them all not as separate things, but as inseparable parts of one harmonious entity.' "

*Fields*, 324 Wis. 2d 417, ¶ 14 (citations omitted). Insofar as Savage and his experts are able to present such evidence, they may so testify at trial.

### *ATC's Expert Witness*

¶ 18.    Savage, in a pretrial submittal, asserted that he had a right to call ATC's appraisal expert as his witness. ATC's appraisal expert invoked his privilege to not testify on Savage's behalf, and the court upheld the privilege. In *Burnett v. Alt*, our supreme court determined that experts have a privilege that prevents them from being forced to testify absent "compelling circumstances." *Burnett*, 224 Wis. 2d at 89. The fact that a party lacks other evidence is not a compelling circumstance. *Glenn v. Plante*, 2004 WI 24, ¶¶ 29–30, 269 Wis. 2d 575, 676 N.W.2d 413. The inquiry as to whether there is a compelling circumstance "must focus on whether there is unique or irreplaceable opinion testimony sought from an expert, not on procedural aspects of the case." *Id.*

¶ 19.    Savage argues that the "compelling circumstance" that should override the privilege claimed by ATC's expert is that ATC's expert already was identified

as a witness in the case and his report was given to opposing counsel. Identifying an expert witness and exchanging reports does not meet the standard for "unique or irreplaceable opinion testimony." The fact that Savage had his own experts available to testify as to the change in valuation of his property belies any argument of uniqueness or irreplaceability. The fact that the circuit court erroneously precluded Savage's experts from testifying is not a "compelling circumstance."

¶ 20.   Savage alternately argues that Wisconsin's expert privilege only applies in medical malpractice cases and that, in any case, the privilege was waived when ATC shared its expert's report with Savage. Neither argument is convincing. Although the expert privilege has been applied in medical malpractice cases, nothing in those cases limits its application as such. *See, e.g., id.*, ¶ 26. We also do not find that ATC's expert waived his privilege. The voluntary exchange of expert reports does not open the door to an adverse examination of an expert witness in the absence of a showing of necessity. *See Blakely v. Waukesha Foundry Co.*, 65 Wis. 2d 468, 480, 222 N.W.2d 920 (1974). Savage has not demonstrated such a necessity.

## CONCLUSION

¶ 21.   We reverse and remand for a jury trial as the circuit court erred in restricting the evidence to only "aerial rights" and granting summary judgment to ATC. Savage and his experts may testify, pursuant to Wis. Stat. § 32.09(6g), as to their opinions of the fair market value of the whole property before and after the taking. The bases of the opinions offered by Savage, his experts,

and ATC's witnesses as to the loss of fair market value of the property goes to the weight of that evidence rather than its admissibility.

*By the Court.*—Order reversed and cause remanded with directions.