COURT OF APPEALS
DECISION
DATED AND FILED

April 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP896**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV2004

IN COURT OF APPEALS
DISTRICT IV

CCH INVESTMENTS LLC,

PLAINTIFF-APPELLANT,

V.

AMERICAN TRANSMISSION COMPANY LLC
AND ATC MANAGEMENT INC.,

DEFENDANTS-RESPONDENTS.

APPEAL from a judgment of the circuit court for Dane County: RYAN D. NILSESTUEN, Judge. *Affirmed*.

Before Blanchard, Graham, and Nashold, JJ.

¶1 GRAHAM, J. CCH Investments LLC appeals a final judgment entered following a jury trial in this WIS. STAT. § 32.06(10) (2021-22) just

compensation action.[1]  The purpose of the trial was to determine the amount of just compensation to which CCH is entitled for the taking of a transmission line easement on its property by American Transmission Company LLC and ATC Management Inc. (collectively, "ATC").  On appeal, CCH argues that the circuit court's decisions on two of its pretrial motions in limine were erroneous, and that it is entitled to a new trial.  Specifically, CCH argues that the court erred by allowing references to the term "compensation" during the trial, and by allowing ATC to testify about its intended use of the easement.  We reject CCH's arguments and affirm.

## BACKGROUND

¶2    CCH has owned a parcel of commercial real estate in Waunakee since 2012.  At the time CCH purchased the parcel, it was encumbered by a transmission line easement that had been in place since 1915 (the "1915 easement").  Pursuant to the 1915 easement, ATC had erected a steel lattice transmission tower on a corner of the parcel, and it had run electrical transmission wires between the tower on CCH's parcel and the towers on other parcels.  The precise boundaries of the 1915 easement are not delineated and, during the circuit court proceedings, the parties disputed the meaning of certain terms of the 1915 easement and the extent to which it encumbers CCH's property rights.  However, those disputes are not directly material to the issues in this appeal.[2]

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version.

[2] By its terms, the 1915 easement granted ATC the perpetual right to "enter upon said premises" for the purpose of erecting and maintaining a transmission tower and running electrical wires along a specified centerline, which ran parallel to the parcel's eastern and northeastern boundaries.  The parties here disputed, among other things, whether the 1915 easement granted ATC the right to rebuild the existing tower and transmission lines, and the width of the right of

(continued)

¶3     In 2021, as part of a project to rebuild and upgrade the transmission line that passes through CCH's parcel, ATC exercised its eminent domain authority to acquire an updated easement (the "new easement"). The record reflects that ATC intends that the new easement will replace the 1915 easement, and that, upon the completion of this case, ATC will relinquish the 1915 easement.

¶4     The new easement follows the same general path that the 1915 easement follows along the eastern and northeastern boundaries of the parcel. However, unlike the 1915 easement, the width and boundaries of the new easement are precisely delineated—the new easement is .68 acres and encumbers approximately 22 percent of CCH's parcel.

¶5     In the course of rebuilding the transmission line, ATC took down the steel lattice tower and replaced it with a steel monopole tower. The new monopole tower is in a slightly different location than the location of the prior lattice tower, approximately 14 feet closer to the boundary of CCH's parcel.

¶6     CCH did not dispute ATC's right to take the new easement; however, the parties could not reach an agreement about the amount of just compensation to which CCH is entitled. Pursuant to WIS. STAT. § 32.08(5) and (6), the county condemnation commission issued a just compensation award. CCH appealed the commission's award to the circuit court pursuant to WIS. STAT. § 32.06(10), seeking a jury determination regarding just compensation.

---

way granted by the 1915 easement. The circuit court ultimately interpreted the terms of the 1915 easement as allowing ATC to remove and replace the tower and wires on the centerline described in the 1915 easement, and as granting ATC access to the portion of the CCH parcel beyond the centerline that was reasonable and necessary for the purposes for which the 1915 easement was granted. CCH does not challenge these pretrial rulings in this appeal.

¶7      Throughout the course of this litigation, the parties have disputed the amount by which the new easement reduced the value of CCH's parcel—an issue that was tied directly to the parties' disputes regarding the extent to which the 1915 easement burdened CCH's property rights. CCH's position has been that the new easement is significantly more burdensome than the 1915 easement, and that the taking resulted in a significant decrease in the fair market value of CCH's parcel. CCH's appraiser, Scott MacWilliams, opined that the CCH parcel lost approximately 8 percent of its fair market value as a result of the new easement. By contrast, ATC's position has been that the new easement is not substantially different from the 1915 easement, and that the taking resulted in only a modest reduction of the fair market value of CCH's parcel, as compared to the fair market value of the parcel as burdened by the 1915 easement. ATC's appraiser, Kevin Zarem, opined that the CCH parcel lost approximately 1.2 percent of its fair market value as a result of the new easement.

¶8      Shortly before the trial, the parties filed various motions in limine, and the circuit court's rulings on two of CCH's motions are the subject of this appeal. The first of CCH's motions sought to preclude "jury instructions, testimony, and exhibits regarding the effect of the special verdict." The second sought to preclude "testimony relating to the manner or frequency with which the easement will be used." The parties filed written briefs for and against the motions, which the circuit court addressed during a pretrial hearing. We discuss the parties' arguments and the court's rulings at greater length in the discussion below.

¶9      CCH's just compensation action proceeded to trial. Consistent with the special verdict set forth in WIS JI—CIVIL 8101, the jury was asked to determine "the fair market value of the entire property owned by CCH" as of the

4

date of the taking and "the fair market value of the remaining property owned by CCH … immediately after ATC acquired the new easement on [the date of the taking], as if the transmission line project was completed by [that date]." Based on the jury's answers to these questions, the circuit court determined that the value of CCH's property decreased by $17,345, and it entered judgment accordingly. CCH appeals.[3]

## DISCUSSION

¶10 As noted, CCH challenges two of the circuit court's pretrial rulings regarding its motions in limine on appeal. It argues that the court erred when it allowed witnesses and counsel to use the term "compensation," and when it allowed a witness to testify about ATC's intended use of the transmission line easement. We review a decision to admit or exclude evidence under an erroneous exercise of discretion standard. *Gaethke v. Pozder*, 2017 WI App 38, ¶23, 376 Wis. 2d 448, 899 N.W.2d 381. A court erroneously exercises its discretion if, among other things, its evidentiary decision is based on an incorrect view of the law. *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶15, 342 Wis. 2d 29, 816 N.W.2d 853 (citations omitted).

---

[3] In its appellate briefing, ATC sometimes cites to the appendix that was submitted with CCH's brief without including parallel citations to the appellate record that was compiled by the clerk of the circuit court. We remind counsel that the appendix is not the record, *United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322, and that the state rules of appellate procedure require parties to include appropriate citations to the record, *see* WIS. STAT. RULE 809.19(1)(d)-(e).

## I.

¶11    The first issue on appeal is whether the circuit court erred by allowing witnesses and counsel to use the term "compensation" in the presence of the jury when referring to the amount by which the new easement reduced the value of CCH's parcel.  As discussed above, the special verdict asked the jury to determine "the fair market value of the entire property owned by CCH" as of the date of the taking (sometimes referred to as the "before value"), as well as "the fair market value of the remaining property owned by CCH … immediately after ATC acquired the new easement …, as if the transmission line project was completed by [that date]" (sometimes referred to as the "after value").  According to CCH, the use of the term "compensation" at trial violated ***Zombkowski v. Wisconsin River Power Co.***, 267 Wis. 77, 64 N.W.2d 236 (1954), and ***Besnah v. City of Fond du Lac***, 35 Wis. 2d 755, 151 N.W.2d 725 (1967), because it informed the jury "of the effect of the special verdict"—namely, that the before and after values found by the jury would be used to calculate the compensation that ATC would pay CCH for the easement.[4]

¶12    By way of background, CCH first raised this issue in a motion in limine, which, as noted, sought to preclude "jury instructions, testimony, and

---

[4] In its opening appellate brief, CCH also contends that it was error to allow the jury to hear references to CCH's "damages," but we reject that assertion without further discussion based on the representations that CCH made during the circuit court proceedings.  Specifically, although CCH's brief in support of its motion in limine asked the court to preclude use of the term "damages," CCH's attorney took that request off the table during the pretrial hearing, explaining that CCH was not concerned about the use of that term because the expert witnesses retained by the parties agreed "that the property is damaged by the easement."  CCH failed to preserve this aspect of its motion in limine in the circuit court, and it therefore cannot now assert error on that basis on appeal.  *See **Atkinson v. Mentzel***, 211 Wis. 2d 628, 642-43, 566 N.W.2d 158 (Ct. App. 1997) (when an allegedly erroneous ruling was invited by the appellant during the circuit court proceedings, we "will not review [the] invited error").

exhibits regarding the effect of the special verdict." In support of its motion, CCH cited to *Zombkowski*, 267 Wis. at 81, which disapproved of a jury instruction that informed the jury that "[t]he difference in the fair market value of the [property] as a whole before and after the [taking], if any, constitutes the damages caused to the plaintiff." *Id.* The *Zombkowski* court disapproved of the instruction based on the "fundamental rule in the trial of cases … that the jury should not be informed of the effect of its answers to the questions of a special verdict." *Id.* CCH also cited *Besnah* for the proposition that, "*even in condemnation cases*, a jury should not be informed of the effect of its answers to the questions of a special verdict." *Besnah*, 35 Wis. 2d at 759 (emphasis added) (citing *Zombkowski*, 267 Wis. at 81). The *Besnah* court's discussion on this point was focused on the proper form of the special verdict: "The proper form of submission of the issue of damages to the jury is in the form of a two-question special verdict, one question asking for a finding as to the before-taking value of the owner's whole parcel and the other asking for a finding as to the after-taking fair market value …." *Besnah*, 35 Wis. 2d at 758-59.

¶13 In support of its motion in limine, CCH argued that, consistent with the special verdict form that was approved in *Besnah* and as set forth in WIS JI—CIVIL 8101, the jury should be asked only to determine the value of the parcel before and immediately after the taking, and nothing more. CCH further argued that "evidence or exhibits that talk about how much the landowner will be paid and just compensation, as opposed to the before and after values, [are] not relevant and should be excluded."

¶14 ATC opposed the motion, at least in part. It agreed that the jury instructions and special verdict form should be consistent with WIS JI—CIVIL 8101, which, as discussed above, addresses the before and after values of

7

the property. However, ATC opposed CCH's request to prohibit witnesses and attorneys from referencing the concept of compensation at trial. ATC argued that it would needlessly hamstring the presentation of evidence to prevent witnesses and attorneys from speaking freely and naturally about the concepts that would be evident to all. ATC argued that the jurors would surely "understand what's at stake" in this trial, "the same way a jury understands that plaintiffs in personal injury cases seek compensation for their injuries." That is, the jurors would readily understand that the special verdict answers would be used to calculate the compensation due to CCH, and nothing would be gained by requiring witnesses and attorneys to take the extra efforts necessary to avoid using that obvious and natural term.

¶15 During the final pretrial hearing, the circuit court indicated that it intended "to stick to the standard instructions … and verdict form," and would not specifically instruct the jury about the effect of its verdict. However, as for the remaining aspects of CCH's motion, the court considered it impractical to "prohibit any mention or discussion of [compensation] at any other point." The court explained that it had "to be able to introduce the case to the jury," and that witnesses would be likely to "mention compensation at some point." The court reasoned that "jurors are smart" and would be able to "draw two and two together" to figure out that the dispute was about the compensation owed to CCH. "[W]e should be good," the court stated, "so long as" the concept of compensation was not "a major focus" of the testimony.

¶16 At that point, CCH's attorney interjected to clarify that CCH's primary "concern" was with "the term just compensation," which was "the crux of our motion." According to counsel, that term should be avoided at trial "because it brings in a consideration of equity damages." In response to this clarification,

the court indicated that it would be "fine" if witnesses said "just compensation or compensation at some point," but that the court did not want anyone focusing on those terms.

¶17 Neither the circuit court, the attorneys, nor the witnesses used the specific term "just compensation" at trial. However, both sets of attorneys and appraisers referenced the change in value to the parcel that resulted from the taking, and occasionally referred to that number as the "compensation" that ATC would have to pay CCH for the new easement.

¶18 For example, in his opening statement, CCH's attorney described the "sole issue" that the jury would be "asked to decide" as follows: "The sole issue that you, the jury, are asked to decide is how much did [CCH's] property go down in value because of the transmission line that [ATC] built?" The attorney went on to explain that "both sides agree that the property lost value" as a result of the transmission project, and the question was "how much." CCH's attorney foreshadowed the trial evidence as a disagreement between two appraisers— CCH's appraiser, MacWilliams, who opined that the value of the parcel "goes down by [$]139,700"; and ATC's appraiser, Zarem, who opined that "the property goes down by $14,000."

¶19 It was CCH's appraiser, MacWilliams, who first used the term "compensation" at trial. At that point, which occurred during his direct examination, MacWilliams expressly linked the term "compensation" with the difference in the before and after values of the CCH parcel. When asked by CCH's attorney what he had been retained to do, MacWilliams testified that he had been "asked to do a before-and-after valuation" to calculate "compensation as a result of the encumbrance of [CCH's] property by an easement for a

transmission line." Then, at the close of MacWilliams's direct testimony, CCH presented an exhibit summarizing his calculation of "Compensation Before/After," which he calculated as the difference between the "Before Value" ($1,746,600) and the "After Value" ($1,606,900), amounting to "Compensation Before/After" of "$139,700."

¶20    In its opening appellate brief, CCH does not mention use of the term "compensation" on its own behalf at trial. It instead points to scattered instances in which ATC's appraiser and attorney used the term in a manner that was similar to how MacWilliams had used the term in his testimony and report.[5] CCH argues that, through these references, the circuit court allowed ATC to improperly inform the jury "of the effect of the special verdict" which, CCH contends, was reversible error. We disagree for at least the following reasons.

---

[5] For example, CCH directs us to the following direct examination of ATC's appraiser, Zarem, which parallels the examination of CCH's expert discussed above:

> [ATC's attorney:]   Before we get into the details of [your report], could you just give us a summary of your conclusions of value.
>
> [Zarem:]  Well, you guys have heard the concepts of the before-value, which is the original condition in -- with the old easement, and the after-value, which is the -- you know, the value of the property with the new easement.
>
> I thought the before-value -- my conclusion was $1,182,000; and my after-value, my conclusion was $1,168,000; and that results in a compensation of $14,000, which is the difference between the before-value and the after-value.

CCH did not object to this testimony. Nor did it object when ATC offered an exhibit summarizing Zarem's opinions, which calculated the amount of compensation as $14,000.

¶21 First, during the pretrial hearing, CCH clarified that the "crux" of its "concern" was the use of the term "just compensation." CCH got what it asked for in that respect—the term "just compensation" was not uttered during trial.

¶22 Second, as for the use of the term "compensation," it was CCH that first introduced the term at trial, expressly linking it to the "decrease in value" in the property that was caused by the easement. Thus, to the extent that the mere reference to "compensation" violates the rule against informing the jury of the effect of its verdict in a manner that was prejudicial to CCH, it was CCH that first led the jury down that path.

¶23 Third, as we now explain, we are not persuaded that the circuit court's ruling on CCH's motion in limine violated *Zombkowski*, *Besnah*, or any other case.

¶24 The reason for the rule against informing the jury about the effect of its answers to special verdict questions is that jurors are not supposed to "concern themselves about whether the verdict answers will be favorable to one party or to the other party, nor … with what the final result of the law suit may be." *Delvaux v. Vanden Langenberg*, 130 Wis. 2d 464, 481-82, 387 N.W.2d 751 (1986); *see also McGowan v. Story*, 70 Wis. 2d 189, 197, 198, 234 N.W.2d 325 (1975) (the rule is designed "to secure a direct answer free from any bias or prejudice in favor of or against either party," and "to get the jury to answer each question according to the evidence, regardless of the effect or supposed effect of the answer upon the rights of the parties as to recovery" (citations omitted)). As discussed above, *Zombkowski* disapproved of a jury instruction that explained how "damages" would be calculated in a takings case, *Zombkowski*, 267 Wis. at 81, and *Besnah* prescribed the proper form of the special verdict, *Besnah*, 35 Wis. 2d at 759.

11

Here, the circuit court followed these cases to the letter with regard to the jury instructions and the form of the special verdict.

¶25     We do not read **Zombkowski** or **Besnah** as extending further to categorically prohibit any and all reference to the term "compensation" in a just compensation case.  As our supreme court has explained, remarks by witnesses or attorneys are "not improper merely because an intelligent juror might be able to infer therefrom the effect upon the final result of [the juror's] answers to the special verdict."  **Kobelinski v. Milwaukee & Suburban Transp. Corp.**, 56 Wis. 2d 504, 521, 202 N.W.2d 415 (1973).  Indeed, in **Besnah**, shortly after repeating the rule that a jury should not be informed of the effect of its verdict, the court went on to reproduce the plaintiff's appraiser's trial testimony from that case, which featured heavy use of the term "damages."  Specifically, the appraiser was asked about his "opinion as to the total damages" during his direct examination, and on cross-examination, he reasserted his opinion about the dollar value of "the damage to the plaintiff for the taking of the land."  **Besnah**, 35 Wis. 2d at 760-61.  The **Besnah** court raised no concern about the appraiser's testimony, even though a jury could readily infer from that testimony that its answer to the special verdict questions would be used to calculate the damages that would be paid as compensation for the taking.

¶26     Finally, even if we were to consider the use of the term "compensation" to be a technical violation of the rule (and we have explained why we do not), any such violation would undoubtedly be harmless.  WISCONSIN STAT. § 805.18(2) provides in pertinent part:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of ... error as to any matter of pleading or procedure, unless …, after an examination of the entire action or proceeding, it

> shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

For an error to affect a party's substantial rights, there must be a reasonable possibility that the error contributed to the outcome of the trial. *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698; *see also Ellsworth v. Schelbrock*, 229 Wis. 2d 542, 563, 600 N.W.2d 247 (Ct. App. 1999) (comments by an attorney that informed the jury of the effect of its answers to the special verdict cannot have affected the outcome of the trial if it "states no more than is apparent to the entire jury panel based on the parties' contentions during the trial").

¶27 Here, CCH has not explained how both parties' brief references to the concept of compensation could have affected its substantial rights. During the pretrial proceedings, CCH asserted that these references would invite the jury to "[c]onsider[] the difference" in the before and after values, which would "lead the jury down the road of an equitable balancing analysis of whether" the compensation CCH would receive was "'too much' or 'too little.'" And on appeal, CCH asserts that ATC's occasional references to compensation "refocused" the jury's attention "from the task of finding before and after values" to the task of "finding a specific amount of compensation or damages to award [CCH]." Yet, CCH fails to explain how the mere use of the term "compensation" would have refocused the jury's attention any more than the comments that CCH's attorney made throughout the course of the trial, which encouraged the jury to evaluate the change in value of the parcel that resulted from the taking as a dollar amount that represented a percentage reduction in the before value.

## II.

¶28  The second issue on appeal is whether the circuit court erred when it allowed ATC's witnesses to testify about the "manner and frequency" with which ATC had used its 1915 easement and intended to use the new easement.  CCH relies on *Savage v. American Transmission Co., LLC*, 2013 WI App 20, ¶16, 346 Wis. 2d 130, 828 N.W.2d 244, for the proposition that a jury must consider "the most injurious use reasonably possible" of a property under the terms of an easement when determining the after value of the property.  According to CCH, under *Savage*, ATC should not have been allowed to present any evidence about how it expected to use the new easement, because that evidence could have led the jury to determine an after value of the parcel based on something less than "the most injurious" use that ATC's new easement would allow.

¶29  By way of background, CCH first raised this issue in its second motion in limine.  In its brief, CCH cited *Savage* for the proposition that "[t]he after value must be based upon the expectation that [ATC would] exercise all of the rights they have acquired."  It argued that any testimony from ATC's representatives about how ATC "typically" uses or "'anticipate[s]' using the easement" should be excluded because it was "not relevant" and would "only serve to confuse and mislead the jury."[6]

¶30  The circuit court denied the motion, essentially on the grounds that *Savage* directs that the jury's assessment of after value should be based on the

---

[6] CCH did not ask the circuit court to give a jury instruction based on the standard articulated in *Savage v. American Transmission Co., LLC*, 2013 WI App 20, ¶16, 346 Wis. 2d 130, 828 N.W.2d 244, regarding the "most injurious use," and no such instruction was given.

most injurious use that was "reasonably possible," (citing *Savage*, 346 Wis. 2d 130, ¶16), and that evidence regarding how ATC actually uses its transmission line easements was relevant to the jury's determination of what was "reasonably possible." In issuing its ruling, the court further explained that CCH could present evidence and argument that ATC would be able to use all of the "broad" rights granted by the new easement, and that ATC would not "be able to deny" that they could use all of those rights.

¶31 Then, at the trial, much of the evidence and argument related to the differences between the terms of the 1915 easement and the terms of the new easement, and the extent to which the terms of the new easement were more burdensome than the terms of the 1915 easement. ATC's senior real estate project manager, Kevin Lynch, testified about these differences, and also about ATC's use of the 1915 easement and its intended use of the new easement. Among other things, Lynch testified that ATC's intended use of the new easement was substantially similar to its prior use of the 1915 easement. Then, on cross-examination, Lynch acknowledged, among other things, that "it's the actual easement document that governs the rights that ATC has acquired on the [CCH] property," and that the new easement document would "govern[] the restrictions on the property moving forward." Lynch further acknowledged that the new easement document does not limit the number of poles that ATC can erect on the easement in the future, that it does not specify any location of any additional poles that could be erected on the easement, and that it does not set forth any limitation on the voltage that could be transmitted by ATC's transmission line.

¶32 On appeal, CCH argues that the circuit court erred by allowing Lynch to testify about ATC's actual and intended use of the new easement. According to CCH, *Savage* sets forth a rule of exclusion, under which all evidence

of ATC's actual or intended use of an easement is irrelevant and inadmissible. For reasons we now explain, we disagree with this interpretation of *Savage*.

¶33 In *Savage*, the transmission company owned an existing easement on which it had built a transmission line through Savage's property, and it later acquired a supplemental easement on a strip of land that ran alongside the existing easement. *Id.*, ¶4. The problem that this court identified in *Savage* was that the circuit court had misinterpreted the scope of the property rights that Savage lost as a result of the supplemental easement, and the circuit court dismissed the case without a trial based in part on its misinterpretation of the supplemental easement. *Id.*, ¶¶2, 6, 10-13.

¶34 On appeal, we explained that, in misinterpreting the scope of the easement, the circuit court had "erroneously focused on what [the transmission company] stated that it intended to do within the Supplemental Easement area rather than allowing a jury to consider how the express rights, restrictions, and limitations imposed by the Supplemental Easement affect the value of the 'whole' property on a before and after basis." *Id.*, ¶15. It was in this context that we reiterated the general principle that "[c]ompensation for the taking of an easement is based on an assumption that the condemnor … will exercise all the rights it has taken," and that "[t]he jury must consider the most injurious use of the property reasonably possible." *Id.*, ¶16.

¶35 Understood in this context, it is apparent that *Savage* does not mandate the exclusion of any evidence about how an easement might actually be used. Indeed, the *Savage* court cited *Hoekstra v. Guardian Pipeline, LLC*, 2006 WI App 245, 298 Wis. 2d 165, 726 N.W.2d 648, for the proposition that "[a]ny factor … that affects the fair market value of property and that could influence the

decision of a prospective buyer should be considered in the valuation." *Savage*, 346 Wis. 2d 130, ¶16 (quoting *Hoekstra*, 298 Wis. 2d 165, ¶33). What is reasonably possible under the terms of the new easement is a fact question that will inevitably give rise to disputes and competing evidence for the jury to weigh and evaluate. Information about how ATC typically uses its transmission line easements was undoubtedly relevant to the jury's consideration of the most injurious use reasonably possible and, in turn, a prospective buyer's consideration of the fair market value of the CCH parcel after the taking. We therefore conclude that the circuit court did not err by allowing this evidence.[7]

## CONCLUSION

¶36　For all of these reasons, we reject CCH's arguments and affirm the judgment.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

---

[7] On appeal, CCH also argues that the circuit court erred when, over CCH's objection, the court allowed ATC's attorney to use a chart during his closing argument that compared the rights taken under the 1915 easement with the rights taken under the new easement. CCH argues that the court should have sustained its objection because the chart "did not accurately reflect the rights actually granted in the [new] easement," and improperly "invited the jury to examine the value of the rights gained [by ATC], rather than the impact of the easement on the CCH property." In its response brief, ATC points out that the version of the chart it used during its closing argument is not included in the appellate record. ATC argues that, because the chart is not part of the record, CCH cannot meet its burden to show that the circuit court erred by overruling its objection. CCH does not respond to this argument it its reply brief and, on that basis, we deem CCH to have conceded the argument. *See United Co-op v. Frontier FS Co-op*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to reply to respondent's argument may be deemed conceded).